CHESTER S. EDWARDS, petitioner,

*v.*

RUTH EDWARDS.

[Decided March 29th, 1917.]

1. A divorce petitioner's perjury may constitute contempt of court as well as a crime.

2. Where such perjury is admitted or demonstrated, it should be punished as contempt, but, where the facts are in dispute, sound public policy generally requires that the offender be left to the criminal law.

3. A divorce petitioner's testimony that he had not seen his wife during a period when he was shown to have been living with her, constitutes perjury punishable as contempt of court.

On petition for divorce. On application to open decree. On proceedings to punish for contempt.

*Mr. Charles M. Myers,* intervening for the court and state.

*Mr. Jerome T. Congleton,* for the petitioner.

LANE, V. C. (at conclusion of hearing).

This is a hearing upon an order requiring respondent, Chester S. Edwards, to show cause why he should not be punished for contempt for imposition and fraud upon the court and perjury committed by him before a special master in an uncontested divorce suit brought by him against his wife which resulted in a final decree and which could not have so resulted if the petitioner had testified truly. The questions which were asked him, to which the false replies were made, were material and were in my judgment known by the petitioner to have been material at the time he testified. There is also an application to open the decree and to permit an intervener for the state to interpose an answer denying the guilt of the defendant and set-

ting up the defence of condonation. Upon the facts coming to the knowledge of the court in another suit these proceedings were initiated by the court. A solicitor was appointed to prosecute the contempt for the court and to intervene for the state in the divorce suit. The testimony which has been taken upon the application to punish for contempt is applicable to the final hearing upon the petition and answer, assuming it to have been filed. Under the circumstances, counsel have very properly agreed that if the record can be perfected and put in such shape as that it may be done, this may also be considered as a hearing upon the petition and answer, that a proper formal answer will be filed and a proper order of reference obtained. Counsel for petitioner frankly admits that in the present state of the testimony there can be but one decree in this divorce suit, and that a decree dismissing the petition, and if an order of reference is made to me, that will be the order. Counsel asked me to advise such a decree "without prejudice," so that petitioner may file a new petition based upon acts of adultery alleged to have been committed by the wife since those mentioned in the present petition. A request of this kind from a petitioner who stands here charged with and convicted of contempt of court comes with poor grace. I will advise a decree, if the order of reference is made to me, dismissing the petition upon its merits; whether that will bar petitioner from bringing a new suit based upon acts committed since those alleged in the present petition or since the last time that the husband and wife lived together is for the court in some subsequent case to determine.

There has been in this class of cases such a vast amount of perjury that when the court finds itself in a position to make an example of a party who has been guilty it becomes its duty, no matter what its personal feelings may be, to make such an example. The judgment I have reached is not one that has been arrived at hastily. I have considered for years that until courts of this state take the same ground that the federal courts have taken (*149 Fed. Rep. 244; 164 Fed. Rep. 71; 182 Fed. Rep. 349; 194 Fed. Rep. 552; 188 Fed. Rep. 677; 195 Fed. Rep. 299; 202 Fed. Rep. 419; 208 Fed. Rep. 461*); and that was the common law rule, that perjury committed in a cause is

a contempt of court which may and should, under certain circumstances, be dealt with by the court as a contempt, although it may also be a crime, there will continue this outrageous condition. The only effective way to stop this class of perjury, when it has, as in this case, been demonstrated to have been committed, is to punish it as a contempt. It is a contempt and may be punished as such. It may also be punished as a crime. The one act constitutes two offences, one against the court, the other against the state, just as an assault committed in court may be both a contempt and a crime. The power to punish for contempt is an arbitrary power, and should be used only when absolutely necessary in the interest of justice, and then with great care and discretion. Courts will not ordinarily, when the facts are in dispute, punish perjury as a contempt, not because of lack of power, but because sound public policy requires that the offender should be left to the criminal law. But where the facts are admitted or demonstrated, it seems to me that the court would be shirking a clear duty if it did not act. And circumstances may arise which would make it the duty of the court to act even if it was obliged to weigh evidence. Perjury committed by a petitioner which has induced the court to grant a decree of divorce presents one of this class of cases.

The contempt of the petitioner was most flagrant. After the filing of the petition he lived with his wife in practically the same manner as they had theretofore been living. He would have me believe that he did not realize that this resulted or might result in condonation. He says, however, that he was advised some time in January, 1915, before he lived with his wife in May, 1915, that he ought not to meet her. Notwithstanding his denial, I am convinced that he was fully advised at that time of the consequences if he did, or what the consequences might be. He then deliberately, before the special master, testified that he had not seen his wife during all of this space of time that he had been living with her. He knew at the time, and must have known, because there was no reason for his false testimony if he had not known, that if he did not testify the way he did the result would be that his divorce would be denied. He deliberately falsely testified for the purpose of inducing the

court to grant him this divorce. When a condition of this kind arises, and it is demonstrated, it is the duty of the court to punish the respondent for what he has done. It may serve as an example to others, and we may eradicate to some extent at least this pernicious perjury. Therefore, I think it is my duty, notwithstanding the sympathy I feel for the petitioner, and notwithstanding his youth, to punish him, and I think that no punishment would be adequate that did not carry with it a term of imprisonment. I might say, here, that I will direct the petitioner, under the statute, to pay the costs of the intervener, together with counsel fee of $150. I adjudge the defendant guilty of contempt of court, and the punishment will be that he be confined in the county jail of the county of Essex. I am not going in this case to give a long term or a term which, under ordinary circumstances, would be adequate punishment for an offence of this kind. It is the first that has been prosecuted in this way. If another comes up it will not be treated so leniently, because the parties will then know that I have determined, so far as within my power, at least, to stop this condition of affairs. The punishment that I now mete out is no indication of what I will do in a subsequent case under similar circumstances. I think that the mere fact that this young man must go to jail for any length of time is punishment in itself—he will be committed to the county jail of Essex county for a period of ten days, and thence until the costs of this application are paid. Counsel may draw a commitment.

I have not overlooked the case of *In re Gonzales, 88 N. J. Law 536*, and *In the Matter of the Appeal of Verdon, 97 Atl. Rep. 783*, and particularly the remarks of Mr. Justice Garrison at the conclusion of the latter opinion. No question of the method of procedure is before me in this case.

Mr. Myers—In connection with the counsel fee your honor spoke of. Will your honor consider at this time an application for alimony for the defendant in the pending divorce suit?

Mr. Congleton—It is dismissed.

Mr. Myers—No, your honor said you could not dismiss it until after answer filed and an order of reference was made.

The Court—No, it must be considered as having been dismissed as of this date.

Mr. Myers—Oh, I did not understand, your honor.

The Court—I might say that there is no imputation upon Judge Lambert in any manner, shape or form. The petitioner will be paroled in the custody of his counsel until the order and warrant can be drawn.

Mr. Myers—I will draw it to-day and present it to the court in the morning.