STATE, Respondent, vs. MEESE, Appellant.

*May 2, 1929—February 4, 1930.*

456

For the appellant there was a brief by *Gold & McCann,* attorneys for William Meese, and *Leon B. Lamfrom* and *A. J. Engelhard,* of counsel, all of Milwaukee, and oral argument by *Walter L. Gold* and *Leon B. Lamfrom.*

For the respondent there was a brief by the *Attorney General, George A. Bowman,* district attorney of Milwaukee county, and *Oliver L. O'Boyle,* first deputy district attorney, and oral argument by *Mr. O'Boyle.*

The following opinion was filed June 4, 1929:

FOWLER, J.   It is contended by the State that the motion is not properly before the court because brought by appeal instead of writ of error.   Cases decided prior to passage of ch. 333, Laws of 1927 (sec. 358.13, Stats.), are cited in support.   The cases, however, are inapplicable in view of this statute, which provides that "In all cases in which a writ of· error is authorized . . . in a criminal case" the party entitled to the writ may "take an appeal" as was here done.   As the defendant was adjudged guilty of a "criminal contempt" the case falls within this statute.

It is conceded by appellant's counsel that a clear case of perjury is punishable by the court in whose presence it is committed as a criminal contempt, but strenuously urged that this is not a clear case.   There is much force to their argument.   Were we sitting as a trial court instead of a court of review, we might incline to find the defendant not guilty.   The proof must be "beyond a reasonable doubt." *State ex rel. Rodd v. Verage,* 177 Wis. 295, 316, 187 N. W. 830.   The power to punish for contempt is to be used but sparingly.   It should not be used arbitrarily, capriciously, or oppressively. *State ex rel. Schmidt v. Gehrz,* 178

Wis. 130, 189 N. W. 461. But it is also the law that this court will "not reverse a proper order in such a case except in a plain instance of mistake or abuse of power." *Warren v. Rosenberg,* 94 Wis. 523, 69 N. W. 339. As a general rule, "a reviewing court in contempt proceedings will not consider pure questions of fact." And "although it has been held that the findings of the lower court in contempt proceedings are not conclusive on appeal," the "appellate court will give the same force to the trial court's findings in cases of contempt as in other cases where there is a conflict in the evidence, and where there is evidence tending to show the guilt of the defendant a finding of guilty will not be reviewed." *Rubin v. State,* 192 Wis. 1, 211 N. W. 926. Here the fact of the false swearing is plain, as is the fact that it operated as an "obstruction of the administration of justice," for a good part of two days were consumed mostly in demonstrating the falsity of the statement. The "wilfulness" and "deliberateness" of the false swearing which the court found were not so positively shown, but the manner and demeanor of the witness upon the stand, which the record cannot disclose, may have had decisive weight with the trial judge upon this point. The credibility of his statement that he believed the garage storage record gave correctly the date of taking the car out of storage was affected by the statements of defendant respecting the car he used at the parade, which was in fact the Packard car, and respecting the relative time of taking out the car to the date of the Wagner "slugging" known to the defendant; and by the details given on his second examination respecting his use of the Packard car, his parking and locking of it, and his observation of it across the street at intervals during the night of the bombing. The circumstance that the defendant might readily and with absolute certainty have ascertained the correct date by inspecting the oil and labor charges connected with the car is not without force. While the fact that defendant stated on his first examination that

he first took the car when he changed the tires, standing alone, might be persuasive to indicate that the defendant had no purpose to conceal or deceive, we cannot say that on the whole evidence it was not overborne and that the court was not justified in finding to the contrary.

It was also urged that the date of the taking of the car out of storage and the time when the defendant first drove it were not material to any issue involved in the Adler case in the trial of which the court was engaged, and that hence perjury was not committed by the defendant. But it was material to the issue involved in the inquiry to determine responsibility for the bombing. The bombing was a violation of the court's injunctional order. The defendants were trying to show that the driver of the Adler Packard car was guilty of the violation. It was certainly material on this issue to show that such was not the fact, and the testimony of the defendant that the car was in storage at the time of the bombing and that he did not drive it until five days thereafter negatived such fact.

*By the Court.*—The order appealed from is affirmed.

### On motion for rehearing.

The following opinion was filed February 4, 1930:

FOWLER, J. A motion for rehearing is made in this case on the ground that the decision was based on the understanding by the court that the "bombing" which was the subject of inquiry when Meese gave his false testimony was a violation of an injunctional order theretofore made by the court.

The bombing, which was of a dwelling house of a defendant, was not a direct violation of the injunction, as the injunction was for the protection of plaintiff's property and employees against violence, and did not purport to enjoin violence against the defendants or their property; and if the bombing was done by an agent of the plaintiff it was not a

violation of the injunction at all, as the injunction ran only against the defendants and their agents and confederates. But if in fact the bombing was done by a defendant or a member of the defendant unions or any agent or confederate of the defendants for the purpose of increasing or inciting activities of members of the defendant unions or their confederates violative of the injunction, it was an indirect violation of the injunction well within its spirit and purpose. It was insinuated on the one hand that the bombing was done by the discharged employees or their confederates for the purpose stated, and was claimed on the other that it was done by an agent of the plaintiff. Under these circumstances the court had jurisdiction to inquire who was guilty of the outrage to determine whether the injunction had been violated. Instead of stating that the bombing was a violation of the injunction we should have stated that the court was engaged in conducting a hearing to determine whether the injunction had been violated. In such a proceeding the testimony of Meese was material. And irrespective of this, the inquiry was within the main issues of the case, one of which was whether the conduct of plaintiff was such as to preclude it from relief in equity. The court of its own motion opened the case for further testimony after the parties had concluded their evidence, for the express reason that he felt that facts bearing upon the main issue had not been disclosed. That the plaintiff's employees were committing acts against the defendants of the same nature as those of which the plaintiff was complaining, if done with the knowledge or connivance of the plaintiff, would be ground for dismissal of the complaint. The testimony of Meese was material on this issue also. In either view the finding of the trial court that Meese committed perjury has sufficient support.

It is urged that the opinion indicates that the court doubts the correctness of the trial court's finding of wilfulness on the part of Meese and that for this reason the conviction

should be reversed. But this point is, not does the evidence satisfy us of his guilt beyond a reasonable doubt, but is the evidence sufficient to warrant the trial court in being so satisfied. We cannot say that it is not.

Reconsideration of the case, however, convinces us that the judgment should be reversed on another ground. Question was put to counsel on the argument whether perjury committed on a trial constituted contempt of court and we understood that counsel for plaintiff conceded that it did, and we were led by the supposed concession to pass the point without due consideration. We have now carefully considered this question and are led to the conclusion that the conviction cannot be sustained.

Criminal contempt is based on the fundamental right of self-preservation, that is, the right to restrain acts tending to obstruct and prevent the untrammeled and unprejudiced exercise of the judicial power, by summarily treating such acts as a contempt and punishing them accordingly. *Toledo Newspaper Co. v. U. S.* 247 U. S. 402, 419, 38 Sup. Ct. 560.

Punishment for contempt is the subject of statutory provision in this state, by sec. 256.03, although the statute does nothing more than express the inherent power of the court. There is no provision in this statute directly covering the order of the court in the instant case. The statute provides:

"Every court of record shall have power to punish, as for a criminal contempt, persons guilty of either of the following acts and no other."

Then follow seven paragraphs. The provision making the nearest approach to the instant case is par. (5), to wit:

"(5) The contumacious and unlawful refusal of any person to be sworn as a witness; and when so sworn, the like refusal to answer any legal and proper interrogatory."

The defendant in this case did not refuse to answer any question propounded to him. So far as appears he answered

the questions respectfully. The court, however, was suspicious that the witness was not telling the truth, and on his own motion subpœnaed witnesses and ordered the production of books and papers to determine the truth or falsity of the defendant's testimony. He found that the defendant did not testify truthfully, and that because thereof ·he had obstructed justice.

We are of opinion that the matter is ruled by the case of *Ex parte Hudgings,* 249 U. S. 378, 39 Sup. Ct. 337. It is there held that while there are decided cases treating perjury without any other element as contempt, such holding is mistaken, for the reason that if the conception were true it would follow that when a court was of opinion that a witness was testifying untruthfully the power to punish for contempt would be exercised with purpose to exact from the witness testimony which the court deemed truthful, with result of oppression and imperiling the freedom of the citizen when called as a witness. The rule, which we consider the right one, is there laid down that to constitute contempt as an act done in presence of the court, there must not only be perjury, but the further element of obstruction to the court in the performance of its duty.

In the original opinion we stated that the false swearing " 'operated as an obstruction of the administration of justice,' for a good part of two days were consumed mostly in demonstrating the falsity of the statement." But although the false swearing resulted in consumption of time as stated, it hardly constituted an obstruction of the court in the performance of its duty. If so, every case of perjury would be contempt of court. It is. the duty of the court to require witnesses to answer all material questions without evasion or quibbling and to frustrate obvious attempts to conceal the truth or to avoid answering by protesting ignorance where knowledge is obvious. The *Hudgings Case, supra,* cites as an example of perjury constituting

contempt the case of *U. S. v. Appel,* 211 Fed. 495. It is there said:

"If the witness's conduct shows beyond any doubt whatever that he is refusing to tell what he knows, he is in contempt of court. That conduct is, of course, beyond question when he flatly refuses to answer, but it may appear in other ways. A court . . . ought not to be put off by transparent sham, and the mere fact that the witness gives some answer cannot be the absolute test. . . . If a court is to have any power to compel an answer, it must surely have power to compel an answer which is not given to fob off inquiry. Nevertheless this power must not be used to punish perjury, and the only proper test is whether on its mere face, and without inquiry collaterally, the testimony is not a *bona fide* effort to answer the questions at all."

In the instant case the truth or falsity of Meese's statement did not appear on its face; it could only be determined by collateral inquiry. It was not an apparent effort to avoid answering the question put. It was for conduct of the latter sort that the witness was held in contempt in *In re Rosenberg,* 90 Wis. 581, 63 N. W. 1065, 64 N. W. 299. The refusal there was not to testify, but to disclose facts within his knowledge by professing ignorance when knowledge was obvious. The ground for holding the witness in contempt was obvious prevarication, which the court held "has the same effect upon the administration of justice as a refusal to answer."

*By the Court.*—The motion for rehearing is denied. The former mandate of the court in this action is vacated and set aside. It is ordered that the order appealed from be reversed, and the cause remanded with directions to the trial court to discharge the defendant.