**FAWICK AIRFLEX COMPANY INC., Plaintiff-Appellee, v. UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICAN, LOCAL 735 et, KRES, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21497. Decided March 6, 1950.

Marshman, Hollington & Steadman, Cleveland, for plaintiff-appellee.

Davis, Davis & Handelman, Cleveland, for defendants-appellants.

## OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law from a judgment of guilty of contempt of court of the defendant, Joseph Kres, for the violation of a temporary restraining order entered in this action on March 12, 1949, restricting picketing "other than peaceably and by not more than two pickets at not more than three designated places in and about the premises" of the relator.

The decree of March 12, also enjoined this defendant and others, including The United Electrical Radio, Machine Workers of America, Local 735, from encouraging or allowing the massing of more than two pickets at any time at any place about the plant or premises of the relator except that one representative of the Union may act as a supervisor of picketing who "shall not encourage, allow or participate in a massing, congregating, assembling with two or more pickets." Paragraphs 6, 7, 8, 9, 10 of the decree provided as follows:

"6. From interfering with, hindering, threatening or intimidating in any manner whatsoever plaintiffs, officers, agents, employees, representatives, others having business with the plaintiffs or the families or relatives of any of the foregoing;

7. From interfering with or hindering access to said plant and premises in a manner reasonably calculated to prevent ingress to or egress from the said plant and premises;

8. From blocking or obstructing plaintiff's driveway leading from Clinton Road to plaintiff's plant and premises in any manner whatsoever;

9. From protecting, aiding, abetting or assisting anyone in the commission of said acts;

10. From interfering with or hindering ingress to or egress from said plant and premises, of trucks, automobiles and other vehicles in any manner whatsoever."

On March 24, 1949, the plaintiff filed a motion to show cause why this defendant with others should not be punished for contempt of court, inasmuch as it was alleged that this defendant, with others, had violated the aforesaid decree, in that:

"1. They had, on several occasions, massed and congregated across Clinton Road in a manner calculated to prevent access to the plant by its employees and others;

2. The defendants on March 23 and 24, 1949, massed and congregated at the entrance of plaintiff's plant in numbers greater than permitted by the decree and by violence, fighting, hurling of stones, threatened and intimidated and injured plaintiff's employees as they entered the plant.

3. That the defendants on March 23, 1949, hurled stones at automobiles of plaintiff's employees as they were entering plaintiff's plant in violation of 4, 6, 7 and 10 in the court's order.

4. That the defendants on March 23, 1949, in about the area of West 105 Street and Linnet Avenue hurled stones and bottles at automobiles of plaintiff's employees, threatening and intimidating said employees with the attempted purpose of preventing them from going to work, in violation of paragraph 6 of the court's order.

5. That the defendants on the 24th day of March, 1949, placed themselves along Clinton Road driveway leading into plaintiff's plant, intimidating plaintiff's employees by hurling rocks and bolts at automobiles of plaintiff's employees as they entered the plant in violation of 4, 6, 7, 8 and 10 of the court's order."

Upon trial of this defendant, insofar as this appeal is concerned, the court found him guilty of five specific acts committed in violation of the temporary injunction and of one act of summary contempt in the presence of the court by "telling a deliberate falsehood while testifying under oath in this proceeding."

The five specific instances in which it was held that this defendant violated the injunction, are as follows:

"1. He had general supervision and direction of groups of persons composing a mob, who gathered at West 105 Street and Linnet Avenue on the morning of March 23, 1949, and attempted to prevent a group of plaintiff's employees from going to work;

2. He participated in an attack on the automobile of one Dominic Mayo, in the vicinity of West 105 Street and Linnet Avenue on the morning of March 23, 1949;

3. He led an attack on the automobile of one Dominic Mayo at the entrance to plaintiff's plant and premises on the morning of March 24, 1949;

4. He led an attack on the automobile of one John Sine at the entrance to plaintiff's plant and premises on the morning of March 24, 1949;

5. He led a group of persons that rushed and attacked the automobile of plaintiff's employees at the entrance to plaintiff's plant on the morning of March 24, 1949."

The defendant by this appeal presents the following alleged errors by which he seeks to reverse the judgments of contempt entered against him:

"1. The court below erred to the prejudice of defendants-appellants and abused its discretion by refusing to grant the motions for a bill of particulars, or to make definite and certain.

2. The court below erred in denying the motion of defendant-appellant for dismissal of the charge against him made at the close of plaintiff's testimony and renewed at the close of all the testimony.

3. The sentences of the court below were severe, harsh and excessive and without authority under the law;

4. The court below erred in admitting evidence offered by the plaintiff and excluding evidence offered by the defendant;

5. The court below erred to the prejudice of defendant, Kres, and committed grave abuse of discretion, in requiring defendant to deposit security bond, the same not being authorized by law;

6-7. The court below erred to the prejudice of defendant, Kres, and committed abuse of discretion in allowing and participating in a line of questioning of defendant regarding his political activities, affiliations and religious beliefs.

The proceedings of the lower court were irregular and un-

authorized by law and constituted abuse of discretion by which defendants-appellants were denied a fair trial.

8. The findings of the lower court and its sentences and orders are not sustained by sufficient evidence are contrary to law and unauthorized by law.

9. The court below erred, to the prejudice of the defendant, Kres, in finding that he told a falsehood in court and finding him guilty of summary contempt of court.

10. For other errors appearing on the face of the record prejudicial to the rights of defendant, Kres."

The first assignment of error will be overruled for the reason that in open court the defendant through his counsel stated that during the course of the trial he was able to offer all of the evidence there was available to him and he was therefore not prejudiced by the overruling of his request to make the allegations of the motion to show cause more definite and certain.

The fifth claim of error relates to the question of whether or not error was committed in requiring the defendant to give a security bond to abide the decree of the court, under the provisions of §11888 GC: the prosecution of this contempt proceeding being under §12137 to §12142, inclusive, GC.

The right to invoke the remedial provisions of §12137 to §12142, inclusive, GC, for the violation of a temporary restraining order was decided in the case of **Castings Company v. Steel Works, 148 Oh St 73.** The court held—(syllabus 1):—

"1. Secs. 12137 and 12142 GC, providing for the punishment of a person found guilty as for a contempt by 'disobedience of, or resistance to, a lawful writ, process, order, rule, judgment or command of a court or an officer' authorize the assessment of a fine and the commitment of a person to jail who wilfully violates a temporary restraining order issued in a labor controversy upon written complaint and after hearing."

Also, in the case of **Pilliod v. Searles, 115 Oh St 694,** the court in considering whether the provisions of §§11887 and 11888 GC could be enforced in conjunction with §§12137 to 12142 GC, said at page 697:

"Secs. 11887 and 11888 GC prescribing the penalty for disobeying an order of injunction, are not exclusive, but are cumulative with §§12137, 12142 and 12147 GC, relating to contempt and the punishment therefor."

The trial court in the case now before us did not assess a penalty against the defendant under §11887 and 11888 GC.

The fine and jail sentences were imposed under the authority of §§12137 to 12142 GC. The security bond ordered under the provisions of §11888 GC, related solely to the defendant's future conduct with respect to the temporary restraining order and was not in punishment for past violations. The provisions of §§11887 and 11888 GC authorizing the trial court to require a bond to keep the peace are not without support in other provisions of the statutes of Ohio. Sec. 13451-11 GC provides:

"A person convicted of a misdemeanor may be required by the judge or magistrate to enter into a recognizance, with sufficient surety, in such sum as the judge or magistrate deems proper to keep the peace, and be of good behavior for such time, not exceeding two years, as the court directs. The court may order such person to stand committed until such order is complied with or he is discharged by law, but the court may discharge such person at any time on his own recognizance or cancel such recognizance."

The provisions of this section can be enforced only upon conviction of a misdemeanor, as for example, the violation of §12423 GC, defining Assault and Battery. The remedies here provided are cumulative. The fine or jail sentence is imposed under §12423 GC as punishment for the violation of that section and the bond, if required, under §13451-11 GC, seeking to preserve the peace in the future.

The trial court in the case now before us, therefore acted within his statutory power. We find no error in requiring the defendant to give a security bond under the provisions of §11888 GC, after imposing a fine and sentence under §12142 GC.

The defendant's claim of error No. 3 cannot be sustained because such sentences as were imposed were entirely within the provisions of the statutes relied upon as the basis for the prosecution.

Coming now to Assignments of Error Nos. 2 and 8. There is no question in the record but that the defendant had personal knowledge of the court's temporary injunction. He was, by his own testimony, the local representative of Local 735, United Electrical Radio Machine Workers of America C. I. O. He was a party, named personally, as a defendant, in the case.

The evidence discloses that a strike had been called of its members by Local 735 employed at Fawick Airflex Corporation Inc., on March 7, 1949, which caused a work stoppage at its plant on Clinton Road near the westerly boundary of

the City of Cleveland. On March 9, 1949, a petition seeking an injunction and equitable relief was filed and upon hearing of a motion for temporary injunction seeking to limit the number of pickets the same was granted and the order of the court granting such temporary injunction was set forth in a journal entry of March 12, which is set forth in part above.

The evidence shows that on the morning of March 23, 1949 shortly before seven o'clock a group of plaintiff's employees desiring to return to work, met on West 105 Street between Fortune and Linnet Avenues. While they were thus assembling, a number of strikers, probably more than twenty in number, came upon the scene for the unquestioned purpose of preventing the workers assembled from going to the plant of the plaintiff. Beer bottles and other missiles were thrown at the workers and considerable violence ensued. A similar or even more violent scene occurred a short time later as the workers attempted to enter the plant on Clinton Avenue. The distance between the points where these conflicts took place was approximately one mile. Again, on the morning of March 24, a like scene took place in front of the plant of the relator.

In all of these conflicts the police of the City of Cleveland, the sheriff of Cuyahoga County and the officers from Brooklyn Village had to be called to restore peace and quiet and protect the safety of the people desiring to return to work.

On the occasion of each of these disturbances the defendant Kres was near at hand. When the first attack took place on West 105 Street he, according to his own testimony, had just been or was then parked in his automobile across the street. At the time the workers were subjected to the danger of rocks, bolts and other missiles on March 23, at the entrance of the plant, defendant was parked within 300 feet of the plaintiff's gate. He was also at the lean-to on the morning of March 24 when the disturbance took place.

All that took place was not an unorganized and sudden controversy. The effort of preventing the returning workers from getting to plaintiff's plant in safety on all of these occasions, had every appearance of pre-planned organization. In all, the circumstances developed by the evidence, was clearly sufficient to show that Kres, the head officer of Local 735, not only was at hand to give directions and encouragement but did in fact direct the activities of his fellow members in violation of the decree of the court.

The trial court's conclusion that this defendant took part in the disturbance on West 105 Street in the vicinity of Linnet Avenue, on the morning of March 23rd, as found in

paragraphs one and two of the court's journal entry of April 27, is supported by sufficient evidence. The acts described in these two paragraphs, however, involve the same and one continuous act in violation of the court's injunction, and is subject to only one fine of Five Hundred Dollars and sentence of ten days imprisonment, and to that extent the judgment is modified, and as modified will be affirmed.

Likewise, the trial court's conclusion as to the disturbance at the entrance of plaintiff's plant on March 24th as set forth in paragraphs 3, 4 and 5, as to defendant Kres, is sustained by sufficient evidence. The acts described in these three paragraphs however constitute but one continuous act, in violation of the court's injunction and is therefore subject to but one fine of Five Hundred Dollars and ten days imprisonment, and to that extent the judgment is modified, and as modified will be affirmed.

Coming now to the ninth assignment of error. The court entered a fine and sentence against the defendant as and for a summary contempt of court "for telling a deliberate falsehood" in the presence of the court, while testifying under oath. The judgment of guilty of a contempt committed in the presence of the court was upon the authority of §12136 GC, which provides:

"A court or judge at chambers, summarily may punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

On direct examination, while testifying on his own behalf the defendant was asked whether or not he was present at any time when stones or missiles were thrown at the plaintiff's workers or their automobiles as they were attempting to enter the plaintiff's plant. His answer was "I did not see anything."

The record discloses that after such answer, the following took place:

"The Court : Wait a minute. Let him answer your question. He says he didn't see any, but he doesn't say whether he was present. Answer that question.

Mr. Davis: Read it back, Mr. Pendell.

The Court: Answer that question, sir.

The Witness: Well, I didn't—I didn't see any. I don't know.

The Court: The question is,—were you present when they were thrown? What do you say to that?

The Witness: Well, if I didn't see that, I don't know whether they were thrown or not, Your Honor.

The Court: You wish to argue too, sir? You will not get an argument out of me.

Put the question back again and if that is the best answer you can give, we will let it go at that. Read the question again.

(Question read by reporter)

The Witness: I did not see any stones thrown.

The Court: All right. I will consider that the best answer."

The basis of the court's holding defendant for contempt on this assignment of error is that the defendant's answer as to not seeing any missiles thrown or was not to his knowledge present when such things took place was a "deliberate falsehood." We have set forth above in some detail the substance of the evidence supporting the plaintiff's claims as to the throwing of missiles on March 23 both on West 105 Street and in front of plaintiff's plant, and again on March 24 at the plant entrance and evidence tending to show that the defendant was near at hand on these occasions. There seems to be no dispute in the record but that missiles were thrown nor is there here presented any question but that the throwing of such missiles was a pertinent question in this proceeding. It remains therefore to determine whether the answers of defendant as above quoted were untruthfully given and that the court had "judicial knowledge" that such answers as given constituted perjury or were willfully and knowingly false, and that they had the effect of obstructing the judicial process.

The right of a trial court to hold a witness for summary contempt for testifying falsely is considered in **9 O. Jur. page 55 paragraph 27** as follows:

"'* * * Of possible acts, few are so antagonistic to the objects of judicial administration as the intentional false swearing which seeks to baffle the search for truth, without which justice is impossible. Such swearing is a flagrant insult to the dignity of the court. In a disbarment proceedings before a federal court it was declared that perjury on the witness stand is a direct and criminal contempt of the court for which, under federal statutes, the offender may be summarily punished. To justify finding one guilty of contempt of court under §12136 GC for contumacious conduct while testifying as witness, giving untruthful, prevaricating and evasive testimony three elements are necessary: (1) That the alleged false answer had an obstructive effect; (2) the

question must be pertinent to the issues; (3) judicial knowledge of the falsity of the testimony, i. e., a patent falsehood, as to which there can be but one opinion; but merely because the court chooses to believe one side in preference to the other, on the ground of greater probability, does not justify the court in holding the witness who supported the losing side guilty of contempt of court. To justify such action by the court the falsity of the witness's testimony given in open court must be a matter of judicial knowledge."

By the greater weight of judicial authority in order to hold a witness guilty of summary contempt for testifying falsely, the court must have judicial knowledge that the witness's sworn testimony was in fact false. A well founded belief of its untruthfulness is not sufficient. Perjury is a crime. Its punishment is provided by statute. Constitutional guarantees provide, among other things, for indictment by a grand jury and a public trial before a jury of the county in which the alleged act of perjury was committed. Likewise, because of the uncertainties which surround the ability of a witness to relate accurately events that have passed, either from faulty memory, inaccuracy of perception or otherwise, one charged with perjury cannot be convicted except upon the testimony of two witnesses or one witness and other corroborating circumstances.

Sec. 13444-22 GC.

In the case of **Second National Bank of Sandusky v. Becker et al, 62 Oh St 289, paragraph 2** of the syllabus reads as follows:

"2. Section 5556 of the Revised Statutes and the provisions therein referred to relating to proceedings in contempt must be so construed and restrained in their operation as to avoid conflict with the inhibitions of the constitution and, insofar as they are in derogation of personal liberty, should receive a strict construction."

It must further be considered that for the protection of the public the penalty upon conviction of the crime of perjury being a felony can result in confinement in the penitentiary and loss of the rights of citizenship until such rights are restored as provided by law. This is not to say that a court should not, where there is "judicial knowledge" of the falsity of the witness's sworn testimony, exercise the judicial right to impose a penalty in contempt for obstructing the judicial process, when the testimony is material and the purpose of the witness was to obstruct justice.

The author in the annotation following the case of Riley et al v. Wallace, Judge, etc., 188 Ky. 472, 222 S. W. 1085 (1920) as reported in 11 A. L. R. 337 on page 352 says:

"In cases where the falsity of the testimony is denied, and is a matter merely of inference of opinion, the court, it seems should not weight the conflicting evidence in a contempt proceeding, but should leave the alleged contemner to be punished criminally, if guilty of perjury. In other words, the contemner is entitled to a jury trial if the facts are substantially disputed, and the court cannot take judicial knowledge that the testimony or allegation is false. This appears to be the doctrine sustained by the authorities, although in some of the bankruptcy cases the court seems to have gone a long way in contempt proceedings in weighing conflicting evidence.

"In Ex Parte Hudgings (reported herewith) ante 333 the court said:

" 'It is true that there was decided cases which treat perjury, without any other element, as adequate to sustain a punishment for contempt. But the mistake is, we think, evident since it either overlooks or misconceives the essential characteristics of the obstructive tendency underlying the contempt power, or mistakenly attributes a necessarily inherent obstructive effect to false swearing. If the conception were true, it would follow that, when a court entertained the opinion that a witness was testifying untruthfully, the power would result to impose a punishment for contempt with the object or purpose of exacting from the witness a character of testimony which the court would deem to be truthful; and thus it would come to pass that a potentialty of oppression and wrong would result and the freedom of the citizen when called as a witness in a court would be gravely imperilled.'

"Courts will not ordinarily, when the facts are in dispute it was said in Edwards v. Edwards, (1917) 87 N. J. Eq. 546 100 Atl. 608, punish perjury as a contempt, not because of lack of power, but because sound public policy requires that the offenders should be left to the criminal law.

"But circumstances may arise, it was said in Edwards v. Edwards, (N. J.) supra, which would make it the duty of the court to punish perjury as a contempt, even though it is obliged to weigh evidence, and perjury committed by a petitioner who has induced the court to grant a decree of divorce was said to present a case of this class."

The case annotated involved a divorce case in which it was claimed a divorce was granted on false testimony of

Riley and another witness. Upon motion to vacate the decree, facts came to light that led the trial judge to conclude that the witness had testified falsely. In the third, fourth and fifth paragraphs of the headnotes it is held:

"3. A chancellor cannot proceed against witnesses for contempt in giving false testimony by information and rule unless he knows that such testimony is false.

4. The court may take judicial notice of common knowledge.

5. Judicial knowledge is the cognizance of certain facts which a judge, under rules of legal procedure or otherwise, may properly take or act upon without proof because already known to him or that knowledge which the judge has or is assumed to have, virtue officii."

In the case of People v. Stone, 181 Ill. Rep. 475, Stone was cited for contempt of court for having testified falsely while under oath in the case of Greenfield v. Stone. The court in reviewing a judgment of guilty said at page 477:

"The substance of the testimony of Stone alleged to be false in the case on trial was that he had paid Greenfield a certain sum of money at a certain time and place. Presumably the court was not there nor in a position to know the actual fact. All it could know in the nature of things was that Stone gave one version of the matter under oath and Greenfield another. It might form a correct conclusion from the entire evidence as to which was telling the truth, but it would not know judicially who had falsified. If false swearing in the presence of the court constitutes direct contempt, then judicial knowledge of its falsity is, in our opinion, indispensable to the right of the court to exercise authority to commit therefor, and there is nothing in the record to disclose that the court knew or could know that the testimony was false. The case will, therefore, be reversed for want of sufficient showing of record to justify entry of the orders referred to."

In Dangel on Contempt, page 148 parag. 304, the author, after citing authority that contempt may be committed in the presence of the court through wilful and intentional perjury which has the effect of obstructing the court in the performance of its duty (citing Blachenbury v. Comm. 272 Mass. 25, where court spent two weeks in trying the contemnor's false claim of being a daughter of a decedent whose estate was in process of administration), says:

"For perjury to constitute a direct contempt, the testimony must be of such a character that the judge before whom it

is given can know judicially that it is false. Citing: People v. Hille, 192 Ill. App. 139; People v. Stone, supra; Riley v. Wallace, supra; **Hegelaw v. State, 24 Oh Ap 103.**"

In Corpus Juris Secundum, Vol. 17 p. 31, paragraph 24 in the article on Contempt, the author says in part:

"In determining whether perjury constitutes contempt the court must consider all the surrounding facts and circumstances, including the relation to the court of the one charged as contemnor. Generally, perjury or false swearing by a witness is sufficient to constitute contempt, provided it obstructs the court in the performance of a judicial duty and as hereinafter discussed in Sec. 59, the fact it also constitutes a crime does not affect the court's power to punish it as contempt, since perjury is an offense against the court as well as the state. However, there is authority to the contrary, and it has been held that perjury, or false swearing by a witness is insufficient to justify a finding of direct contempt unless the court judicially knows that his evidence is false and unless such evidence is pertinent to the issues and obstructive in its effects. While the court will not ordinarily punish perjury as a contempt when the facts are in dispute where the facts are admitted or demonstrated, the court has a clear duty to act and circumstances may arise which make it the duty of the court to act, even though it is obliged to weigh the evidence."

Citing: People v. Tomlinson, 296 Ill. App. 609; Bowles v. U. S. 44 Fed. 2d, 115; Edwards v. Edwards, 100 A. 108 (N. J. Chan. 1917); Eykelborn v. People, 206 P. 388 (Col. Sup. Ct. 1922); State v. Meese, 200 Wis. 454.

In the case of Hegelaw v. State, supra, this court held in the second paragraph of the syllabus:

"2. That court chooses to believe one side in preference to another, as to issue of fact on ground of greater probability would not justify holding witness supporting losing side guilty of contempt of court which requires patent falsehood not merely one based on opinion of court."

And in the case of Protective Assoc. v. Roebling, 18 N. P. (N. S.) 385, the court at page 389, referring to a circuit court pronouncement (unreported) says:

"It is the law that a witness cannot be held for contempt where a witness in answer to a question says 'I don't remember'

or 'that's all I know' as in this case. Our Circuit Court here has so held and Judge Frank M. Gorman in quoting our circuit court in the case of Morrison and Snodgrass Co. v. Hazen et al 10 N. P. (n. s.) 353 and 361, said:

" 'It is true the circuit court has held that Hazen's answer "I don't recollect" or "I don't remember" to questions which it was obvious he could have answered did not constitute contempt.' "

See also: 73 A. L. R. 820, note (b).

In the light of the foregoing authorities we are constrained to the conclusion that two of the elements necessary to hold this defendant guilty of contempt committed in the presence of the court by "telling a deliberate falsehood" are missing, that—judicial knowledge of the falsity of the testimony and that it had the effect of obstructing justice. There is, however, sufficient evidence from which the court could conclude that the witness was untruthful or at least evasive.

The claim of error under assignment of error No. 9 must be sustained.

The defendant's sixth and seventh claims of error are concerned for the most part with the defendant's cross-examination. The claims seem to be that such examination was unjust and beyond permissible limits. Cross-examination is permitted first to test the accuracy of a witness's testimony given in chief and second to test his credibility.

An examination of the record demonstrates that the court held the defendant's examination well within what is known as accepted practice. The objections particularly stressed by defendant are that he was ordered to answer the question of whether or not he was a member of the Communist Party. The defendant refused to answer the question and the events that followed are claimed to be prejudicial to the defendant's rights. The defendant refused to answer the question upon claimed constitutional grounds. The court found that such refusal in direct violation of its order to answer the question, was a contempt of court and made an entry finding him guilty of a summary contempt. This finding is the subject of a separate appeal and therefore need not be considered here. But the claim that his rights were thereby prejudiced is here asserted.

Gradually the fundamental principles of the Communist Party have becomes matters of public knowledge. Their social and political theories are vastly different than those understood and supported by the loyal citizens of our democracy. Our fundamental beliefs are held at naught and have no binding effect in directing their social relations. It has

been demonstrated times without number in recent years in trials and hearings before constituted public committees and bodies the fact that a member of the Communist Party is not bound by his oath under any circumstances. They feel no binding force to the sanctity of an oath. Judges and courts will not shut their minds to truths that all others can see and understand. It therefore is clearly demonstrated that the question of membership in the Communist Party is competent where there is some background for it to test the credibility of a witness. We find no merit to the defendant's claim of error No. 6 and No. 7.

The court finds no merit to all other claimed errors.

For the reasons herein stated the findings and judgment of the trial court are modified as to findings 1 and 2 and also as to 3, 4 and 5, and as thus modified, as hereinbefore stated, said judgments are affirmed. As to the order of contempt as to finding No. 6, defendant's claim of error is sustained and he is discharged therefrom. Exc. Order see journal.

McNAMEE, J, HURD, J, concur.

McNAMEE, J:

I concur in the judgment which in effect sustains the conviction of the appellant on two separate charges of contempt. While the appellant is not prejudiced by this court's action in modifying the trial court's judgment by considering findings 1 and 2 as a single act and in so considering findings 3, 4 and 5. I am of the opinion that this court's judgment should be:

Judgment affirmed as to trial court's findings of guilty No. 1 and 5, and reversed as to findings 2, 3, 4 and 6 because of lack of evidence to sustain same.