**[No. 4124.]**

SHORE v. THE PEOPLE.

1. CONTEMPT—VIOLATION OF INJUNCTION—JURISDICTION.

Where defendant was enjoined from cutting, filling or in any manner interfering with a certain irrigating ditch, an affidavit that charges that after receiving notice of the injunction the defendant cut the bank of the ditch and that the cutting so interfered with and destroyed the ditch as to prevent its proper use, was a sufficient charge of contempt by violating the injunction to give the court jurisdiction.

2. CONTEMPT—VIOLATION OF INJUNCTION—PROCEDURE.

Section 323, civil code, is applicable to a civil contempt for violating an injunction, and a warrant of attachment may issue in the first instance without first making an order to show cause.

3. CONTEMPT—PROCEDURE.

Section 149, civil code, providing for the postponement of final judgment in contempt proceedings until the next term of court, applies only to proceedings before a judge in chambers and has no application to proceedings before the court in term time. Where a party is attached for contempt during the term of court, the matter may proceed to final judgment at the same term.

4. CONTEMPT—PROCEDURE—IMPRISONMENT UNTIL FINE IS PAID.

In imposing a fine for contempt, the court may direct that the party be committed until the fine is paid, and such judgment is not in the alternative, nor indefinite.

5. CONTEMPT—PROCEDURE—JUDGMENT.

Only where a contempt is committed in the immediate view and presence of the court or judge in chambers, and where the punishment is summarily inflicted, is it necessary for the judgment to recite the facts constituting the contempt. In cases of constructive contempt where an affidavit is presented setting forth the facts constituting the contempt, it is not necessary that the judgment should recite the facts.

*Error to the District Court of Montrose County.*

IN the district court of Montrose county in a cause entitled
Osborne et al., plaintiffs, v. Anderson Shore et al., defend-
ants, a temporary writ of injunction, on plaintiffs' application,
was issued against the defendants commanding them to " re-
frain from and desist from cutting, filling, or in any manner
interfering with the Chipeta ditch, * * * its embankments
and rights of way, and with the repairs and operation of the
same by the * * * Chipeta Ditch Company."

This injunction was duly served on the defendants, and on
the following day an application to the court (then in session)
was made by the plaintiffs, supported by affidavit, setting
forth that the defendant Anderson Shore had violated the
writ in that on the next day after a copy was served upon
him, and while H. H. Dresser, the superintendent of the
ditch (he being the agent and in the employment of the
plaintiffs), was engaged in repairing the same, defendant
Shore came upon the right of way of the ditch where Dresser
was, and then and there threatened to kill him if he con-
tinued repairing the ditch, and that said defendant, claiming
the right to do so,—though he had none, and the same was
in violation of . the order for injunction,—made a cut under
plaintiffs' ditch and in its bank, conveying water there through;
that the cut so weakened and destroyed the ditch as to pre-
vent the proper use thereof by those entitled to it; and that
defendant then said to Dresser that if he (Dresser) or any
one else filled the cut, or interfered with the same, that he
(Shore) would dig it out again, and use force to keep it open,
and that he would drop (meaning kill) any one who should
interfere with, or prevent, the conveying of water through
the said cut; and that since the issuance and service of the
writ upon the defendant the latter has repeatedly said to
Dresser that in the matter of said cut he would take the law
into his own hands and use whatever force was necessary.

Based on this affidavit a warrant of attachment was or-
dered by the court. It was issued and served upon the de-
fendant and the latter was brought into court. A hearing
was had, and upon the evidence produced the court found

that the defendant was guilty of violating the provisions of the injunction, and adjudged him guilty of contempt of court, and thereupon ordered that plaintiffs "recover of and from the defendant * * * judgment in the sum of $100 and costs * * * and that defendant be committed to the common jail of Montrose county until the payment of said judgment.

Mr. JOHN GRAY, for plaintiff in error.

Mr. DAVID M. CAMPBELL, attorney general, Mr. CALVIN E. REED and Mr. DAN B. CAREY, for the people.

PER CURIAM.  The only questions that we can consider upon this review are jurisdictional ones, and the only matters argued, said to be of this character, are: (1) the affidavit on which the warrant of attachment was granted does not set up matters that constitute a contempt; (2) a warrant of attachment cannot lawfully issue in the first instance; (3) the judgment was prematurely rendered; (4) the judgment is void because it does not contain a recital of the acts or conduct constituting the alleged contempt, and does not indicate how, and to whom, the fine should be paid to entitle defendant to a discharge, and is in the alternative.

1. If we correctly understand the first point made, it is that even though the acts and conduct of the defendant mentioned in the affidavit are of such a nature as might have rendered him guilty of contempt had his behavior accomplished the object intended, yet since there is no statement in the affidavit that these acts in any way interfered with the operation, or repair, of the ditch, or that its superintendent stopped work as the result of the threats, or that the same frightened him, or kept him from his work, no foundation was laid to give the court jurisdiction in contempt.

The affidavit does leave it in some doubt as to whether the threats of violence terrorized the ditch superintendent, but that is not material.  The defendant could violate the

order by acts falling far short of killing or intimidating that officer. The affidavit distinctly charges that after receiving notice of the injunction the defendant cut the bank of the ditch, which he had no right to do, and that this cutting so interfered with and destroyed the plaintiffs' ditch as to prevent its proper use. This is a direct violation of the letter as well as spirit of that part of the injunctive order which required the defendant to desist from cutting, or in any wise interfering with, the ditch, and we hold that it was sufficient to give the court jurisdiction. That is the limit of our inquiry, unless jurisdiction was lost by some subsequent act of the court, to which contention, made by plaintiff in error, under the following heads, we address ourselves.

2. The proceeding below was evidently under chapter 30 of the code, and the various orders were made by the court in term time. Section 323 of the code of 1887 expressly authorizes the issuance of a warrant of attachment in the first instance, although an order to show cause was also proper. Under our decisions this is a civil contempt, and the procedure of this chapter is applicable. If any irregularities were committed, no objection was made at the time and besides as already stated we are precluded from considering mere errors less grave than jurisdictional ones.

3. Section 149 of the code is relied upon for the proposition that this judgment was prematurely entered. The point is that if, under this section, the warrant of attachment may issue in the first instance, it is the duty of the judge or court, when defendant is brought in by it, either to commit him to jail, or to take bail for his appearance at the next term of court, and to postpone final judgment until term time.

In *People v. District Court*, 19 Colo. 343, it was held that this section had reference solely to proceedings before a judge at chambers, and has no application to proceedings before the court in term time. The judgment, therefore, was not prematurely rendered, and the jurisdiction which the affidavit conferred was not ousted by a departure from the regular course of procedure provided for this class of cases.

4. In imposing a fine it is competent for the court further to direct that the party shall stand committed until the fine is paid; and a judgment so providing is not subject to the criticism of being in the alternative. Neither is this judgment subject to the charge of indefiniteness. It is in form substantially like judgments that are rendered under our practice. The defendant can obtain his discharge at any time by paying the fine to the clerk of the court, or, if execution issue, to the sheriff. If the foregoing criticisms of the final order were tenable at all, they do not present questions of the grave import that can be here considered.

In some cases, as the result of statute or judicial decision, as in *Reynolds v. McElhone*, 20 How. Pr. 454, *Dewitt v. Dennis*, 30 How. Pr. 131, and *State v. Galloway*, 5 Coldwell (Tenn.), 326; 98 Am. Dec. 404, the rule is enforced requiring the judgment for contempt, or order of commitment, to state upon its face the cause of the contempt alleged as the ground of jurisdiction upon which judgment is rendered. This was not necessary at common law, and it has been held that a statement of the facts need not be made unless required by statute. Church on Habeas Corpus, § 340; Rapalje on Contempts, §§ 1, 128; *Easton v. State*, 39 Ala. 551; 87 Am. Dec. 49.

The judgment here did not contain this recital. But under section 322 of our civil code, we think it is only in contempts committed in the immediate view and presence of the court or judge at chambers—that is, in direct contempts —and where punishment is summarily inflicted, that it is necessary for the judgment to recite the facts constituting the contempt. Where the contempt is not committed in the immediate view and presence of the court or judge at chambers—in other words, in cases of constructive contempt which this was—since in such cases an affidavit must be presented setting forth the facts constituting the contempt—it is not necessary that the judgment should recite them. The only object of requiring these facts to be shown somewhere in the record is to enable the reviewing court to see whether or not

they amount to a contempt, and thus to determine from them the jurisdiction of the trial court. And if the procedure prescribed requires an affidavit first to be presented to the trial court containing these facts as the foundation of the proceeding, the court of review can, and does, look to the statement in the affidavit for the purpose of ascertaining whether. or not the court below had jurisdiction, and it is not necessary to repeat the statement in the judgment. We think it will be found on examination that it is only, or usually, under a practice where the judgment itself is the entire record that well considered cases require it to contain a statement of the facts. *Rawson v. Rawson*, 35 Ill. App. 505.

Our examination of the record satisfies us that the facts set up in the affidavit filed in the district court gave the court jurisdiction which was not ousted by anything that occurred during the investigation.

The writ of error should therefore be dismissed.