UNITED STATES v. TERMINAL R. ASS'N OF ST. LOUIS et al.

(Circuit Court, E. D. Missouri, E. D. October 25, 1906.)

1. WITNESSES—PRODUCTION OF DOCUMENTS—POWERS OF COURT OF EQUITY.

A court of equity has power to compel the production of books and papers by virtue of its inherent and general jurisdiction, and this power is not confined to the parties to the suit, but extends to third persons.

2. SAME—SUBPŒNA DUCES TECUM—REFUSAL TO OBEY.

A witness cannot excuse his failure to produce books and papers in obedience to a subpœna duces tecum on the round that the evidence called for is immaterial, irrelevant, or incompetent under the issues in the case; that question being one for the court to determine when the evidence is offered.

3. SAME—GROUNDS FOR ISSUANCE.

To entitle a party to a subpœna duces tecum to require a witness to produce books and papers, it is not necessary that the court should be satisfied beyond a reasonable doubt of their relevancy and materiality as evidence, but a showing which establishes a reasonable ground to believe they may be so is sufficient, especially where the application is made by the United States in a suit of public interest and importance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 20.]

4. SAME.

The fourth constitutional amendment, prohibiting unreasonable searches and seizures, affords no protection to a witness for his refusal to produce books and papers admittedly in his possession in obedience to a subpœna duces tecum issued by a court of equity.

In Equity. On motion of R. M. Fraser to quash subpœna duces tecum.

John F. Lee and E. C. Kramer, for the motion.

D. P. Dyer, C. H. Krum, E. C. Crow, and Chas. Nagel, opposed.

FINKELNBURG, District Judge. The matters now submitted to the court arise in a suit brought by the government of the United States against the Terminal Railroad Association of St. Louis, the St. Louis Bridge Company, the Merchants' Bridge Company, the Wiggins Ferry Company, the Merchants' Terminal Railway Company, and 14 trunk line railroad companies engaged in interstate commerce to and from the city of St. Louis, besides some other parties defendant unnecessary to mention for the purpose of this inquiry.

The bill of complaint is lengthy. It is largely historical. It recites the history of the St. Louis Bridge (commonly known as the "Eads Bridge"), the Merchants' Bridge, and the Wiggins Ferry, the three instrumentalities for transporting freight and passengers across the river at St. Louis, Mo., and it also gives the history of the various terminal railway companies on both sides of the river. After a great deal of detail the bill of complaint, in substance, culminates in the charge that the defendants, intending unlawfully to monopolize trade and commerce, and intending to restrain and suppress competition in interstate commerce at St. Louis, Mo., and East St. Louis, Ill., effected an unlawful combination or consolidation of said bridges and ferries, and of the terminal railways leading up to the same, in the hands of the Terminal Railroad Association of St. Louis, and that said Terminal Railroad Association of St. Louis is, in fact, owned and con-

trolled by the 14 railroad companies who are made defendants in this case. The bill then in effect charges that by reason of the facts set forth the 14 railroad companies aforesaid, through said Terminal Railroad Association, control all the means for transporting freight and passengers across the Mississippi river at St. Louis, Mo., that they arbitrarily fix and exact unreasonable charges and tolls to be paid for freight and passengers to be hauled and transferred in interstate business between Illinois and Missouri, and that all competition has been stifled and destroyed to the detriment of the public and in violation of Act Cong. July 2, 1890, c. 617, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], to protect trade and commerce, commonly known as the "Sherman Anti-Trust Act." The bill finally charges that the properties aforesaid are so operated by the defendants as to constitute a monopoly in their employment and conduct of interstate commerce between the states of Illinois and Missouri and the various states of the United States and foreign countries, and so as to exclude from participation therein all carriers other than those named as parties to the alleged unlawful combination and conspiracy.

The answer of the defendants is also lengthy. It also goes over the history of these bridges and ferries and of the terminal railways leading to and from the same, and sets forth in detail the various transfer and traffic arrangements by which they have come under the single management of the Terminal Railroad Association of St. Louis; but defendants deny that the various steps by which this was done were unlawful, or that it was intended thereby to restrain interstate commerce or stifle competition, or establish a monopoly, or that a monopoly was, in fact, created thereby. Defendants deny all the charges of unlawful combination, conspiracy, or contracts or agreements to restrain or monopolize in any manner or to any extent interstate trade or commerce, and they deny that they have established or exacted unreasonable or exorbitant rates, tolls, or charges. On the contrary, defendants aver that the bringing together of all the former disjointed and diverse interests under the single management of the Terminal Railroad Association resulted in the better handling of traffic, both freight and passenger, and that, instead of restraining trade or commerce, it fostered and promoted the same by affording greater and more expeditious facilities at lower charges. I have stated the issues made by the pleadings only in a very general way, without any attempt at great accuracy, and only in so far as they seem to me to bear on the question now before the court.

It appears from the pleadings, then, that this case is one of public interest, not only to the people of St. Louis, but indirectly to the people of the United States generally, and the bill of complaint states that it is brought by the United States Attorney for the Eastern District of Missouri under the direction of the Attorney General of the United States. When the issues were made up, an examiner was appointed to take the testimony under the sixty-seventh rule governing proceedings in equity, and the taking of this testimony has been in progress for several months, and is now in progress before such examiner. A few days ago the attorneys for the government came and by an ap-

plication in writing showed to the court that certain record books and papers of certain "traffic associations" and "freight committees" in this city were needed by the government as evidence before the examiner in this case. They asked for a subpœna duces tecum against R. M. Fraser, in whose possession these records and papers were alleged to be. The application was in the usual form, and was verified. A subpœna duces tecum was thereupon issued for the production of these books and papers before the examiner. The associations whose records are called for are the following: The St. Louis Coal Traffic Bureau and the St. Louis Coal Traffic Association, the East-Bound Freight Committee of St. Louis, the St. Louis & Cincinnati Freight Committee of St. Louis, and the St. Louis & Belleville Freight Committee.

Mr. Fraser, the person against whom the subpœna was directed, appeared before the examiner, stated his official connection with these associations, and admitted having the books and papers called for in his possession, but refused to produce them, and he has filed a motion to vacate the subpœna for certain reasons in his motion set out, and which will be presently referred to. The attorneys for the government, upon the other hand, have moved for and obtained an order on Mr. Fraser to show cause why he should not be committed for contempt of court, to which counsel for Mr. Fraser have filed a return, setting up substantially the same matters which are made the ground for the motion to quash the subpœna. Both these applications have been heard and are submitted together.

The first reason stated in the motion to quash is that the traffic associations and freight committees whose books and papers are called for are not parties to this suit, and that therefore this court has no right to require their production. This ground for the motion was not much relied on in the argument, and clearly it involves a misconception of the powers of this court. It is well settled that a court of equity has power to compel the production of books and papers in virtue of its inherent and general jurisdiction, and this power is not confined to the parties to the suit, but extends to third persons. U. S. v. Babcock, 3 Dill. 569, Fed. Cas. No. 14,484; 3 Greenleaf on Evidence, § 305; Hale v. Henkel, 201 U. S. 43, 73, 26 Sup. Ct. 370, 50 L. Ed. 652.

The second ground in the motion to quash is that the evidence called for in the subpœna "is wholly immaterial, irrelevant, incompetent, and improper evidence to the issues in said cause:" This objection deals with the materiality of the proposed evidence when the books and papers are produced, and it might be sufficient to say that it is no excuse for not producing them at all. In other words, it is not for the witness to say, "I will not produce these records and papers because I believe, or I am advised, that they would not be material if I did produce them." That would leave the determination of the whole matter with the witness himself and the court would be powerless. Nor, it seems to me, can this question be properly decided in advance by this court upon an application to produce these books and papers, but must ultimately be passed on at the hearing when the trial court has all the evidence before it and the actual situation of the case with all

its issues and bearings is made apparent to the court, so that it may act intelligently, and so that a refusal to admit the testimony may be excepted to and made part of the record in case of an appeal. Edison Co. v. Electric Co. (C. C.) 44 Fed. 296; U. S. v. Babcock, 3 Dill. 569, Fed. Cas. No. 14,484. I cannot bring myself to agree with the contention of respondent's counsel that it devolves upon the government to satisfy this court, beyond any reasonable doubt, that the books and papers called for in this subpœna are relevant and material. I think that for the present all that is required is that there should be shown to be a reasonable ground to believe that they may be relevant and material—not palpably foreign to the subject of inquiry—and I think a sufficient showing has been made in that direction. The government attorneys state to the court that the books and papers called for are relevant and material evidence on behalf of the government, and that it is necessary for the government to introduce them in evidence. In the case of U. S. v. Babcock, 3 Dill. 566, Fed. Cas. No. 14,484, the court, under similar circumstances said: "When the district attorney asserts that they are material papers, we must assume, for the present, that he is fully informed and that they are material." The names of these traffic associations and freight committees indicate that they deal with the subject of transportation and freight rates at St. Louis, Mo., the identical subjects involved in the issues in this case. The oral testimony given by Mr. Fraser before the examiner fully confirms this. Their records and circular letters would therefore naturally appear to bear upon the issues in this case. It was suggested in the oral argument by counsel for respondent that these traffic associations operated only upon transportation from East St. Louis eastwardly; but the interlacing of transportation and rates between railroads and terminal facilities on the east and west side of the river at St. Louis is such that this court would not be justified in assuming that they are absolutely distinct for the purpose of this inquiry. The testimony of Mr. Fraser also shows this. Furthermore, it is alleged, and not denied, that 11 out of the 14 railroad companies which are defendants in this case are also members of these traffic associations or freight committees. I think these things taken together are sufficient to raise a reasonable presumption of relevancy and materiality for the purposes of this motion. The Croker-Bullock Case in the 134th Federal Reporter (C. C. page 241), relied upon by counsel for respondent, was a case of legal privilege claimed by the witness, and the case was decided upon that point. The case of Southern Ry. v. North Carolina Corp. Commission (C. C.) 104 Fed. 700, was also a case of privilege claimed on the part of the witness. Nothing of the kind is claimed in the case at bar. Here there is no claim of legal or personal privilege, nor is it shown that the witness or those whom he represents will be prejudiced in any way by the production of these books and papers, so that it resolves itself into a simple question of relevancy and materiality raised by the witness in this case.

The third and last ground mentioned in the motion to quash is that the things called for are the private books and papers of these freight committees and bureaus and to require their production would be in

violation of the provisions of the fourth amendment to the Constitution of the United States, in this: that it would be "an unreasonable search and seizure of the books, papers, and files of said committees and bureaus." Conceding that a subpœna duces tecum may under certain circumstances be equivalent to a search and seizure, I can see nothing unreasonable in the issuance of this subpœna in this case. Considering the nature of the issues, their breadth and importance, the character of these traffic associations, their relation to the defendants and to the subject of this inquiry, I think there is nothing unreasonable in the number of the books called for or the description of what is wanted. Mr. Fraser admits that he has these books in his possession; in fact, he has brought them into court on the hearing of this motion, but declines to produce them before the examiner for the purpose of testimony, though ordered to do so by a court of competent jurisdiction. The fourth amendment is no protection to him.

The subject of transportation has of recent years become one of great public concern. Much legislation tending to control or regulate it has been enacted by both state and federal governments. To a great extent the subject has become res publicæ. I think the books and papers of these traffic associations called for in this subpœna ought to be produced, and that the private interests and convenience of those associations, if any, ought in a matter of this kind to give way to the exigencies growing out of this suit.

The motion to quash will therefore be overruled.