No. 10,274.

EYKELBOOM *v.* THE PEOPLE.

Decided April 3, 1922. Rehearing denied May 1, 1922.

Proceedings involving contempt of court. Plaintiff in error adjudged guilty of contempt.

*Affirmed.*

## On Application for Supersedeas.

1. WRITS—*Search and Seizure—Subpœna Duces Tecum.* Section 7, article II of the Constitution, providing security against unreasonable search and seizure, has no application to ordinary cases of the production of documents under a *subpoena duces tecum.*

2. COURTS—*Powers—Subpœnas.* Courts have inherent power to issue subpœnas, and that power is not limited to the parties, nor is it affected by section 7, article II of the Constitution concerning search and seizure.

3. CONTEMPT—*Refusal to Produce Documents.* A witness who refuses to produce documents in court as ordered, without justification, is guilty of criminal contempt.

4. *Perjury.* A court has a right to punish as a contempt, manifest perjury committed in its presence, where the court knows judicially and beyond doubt that the testimony is false.

5. *Purging of Contempt.* One who has given false testimony in a court, or conducted himself in an insolent and contemptuous manner in its presence, cannot purge that contempt by a written denial under oath that it ever occurred.

6. *Order of commitment—Recital of Facts.* Cases of criminal contempt are not within the provisions of section 356, code 1908, providing that the order of commitment shall recite the facts. In no event would more than a substantial compliance be required.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Mr. J. W. KELLEY, for plaintiff in error.

Messrs. GILLETTE & CLARK, for the people.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error was sentenced to the county jail for contempt of court for failure to produce papers as required by a *subpoena duces tecum.* To review that order he

brings error and asks the issuance of a supersedeas.

The Denver State Bank was engaged in a general banking business in the city of Denver and The Guaranty Securities Company in negotiating loans and dealing in bonds and securities. The two concerns occupied the same quarters. One Matthews was president of both and plaintiff in error Eykelboom was secretary and manager of the Securities Company and vice-president in charge of the bank. July 19, 1921, the State Bank Commissioner of Colorado, duly authorized by law, revoked the authority of the bank, took possession thereof, and brought an action against the Securities Company alleging that the business of the two concerns had been "intermingled, jumbled and confused" for the benefit of the Securities Company and to the detriment of the bank; that said Matthews was president of a similar company in Nebraska and that these men, by the use of these companies and this bank, operated "an elaborate system of kiting of checks" to the detriment and loss of the bank; that the company had many creditors including the bank; that it was unable to pay and threatened with numerous suits. The complaint set out in detail three separate causes of action for $2908.06, $2250.00 and $9000.00 respectively, together with interest, prayed the appointment of a receiver and that all the property and assets of the company be delivered to him, and the company's officers and agents be enjoined from interfering therewith. This complaint was filed September 15, 1921. Summons was served upon Eykelboom the day before. September 21, 1921, *subpoena duces tecum* was issued directed to Willis Christian and L. D. Eykelboom commanding them to appear on September 22, at 10:00 a. m. in Division 2 of the Denver District Court "to be examined as a witness" and to "produce at the time and place aforesaid a certain package of letters, originals and carbon copies, passing between Williard V. Matthews and L. D. Eykelboom and between 'Williard' and 'Bob' identified by the initials 'F. E. H. 1 to F. E. H. 92' and 'I. M. G.' now in your custody and control * * * and for failure to attend, you

will be deemed guilty of a contempt of court" etc. This subpoena was served the same day. September 22, 1921, Samuel J. Sackett was appointed receiver and qualified.

September 10, (Saturday) 1921, Eykelboom was in New Mexico and had left his Denver office in charge of said Willis Christian. On that day Christian was served with a writ of replevin issued out of J. P. court under which a constable took the file of letters in question, and on the same day Christian obtained the file under a re-delivery bond and returned the documents to a drawer of Eykelboom's desk where they were usually kept, and closed and locked the desk. Prior to their return they had been initialed as described in the subpoena. Eykelboom returned to Denver Sunday evening, talked with Christian at the banking room Monday September 12, and on the day following the latter left for his former home in Wolcott, New York, where he has since remained.

When Eykelboom appeared in court September 22, in response to the subpoena, he was sworn and examined. He stated, among other things, that he did not have the letters; that upon his return from New Mexico they had disappeared; that he did not know where they were; that he had no conversation with Christian about them; that he did have such a conversation; that he had consulted with his attorney Kelley about appearing in answer to the subpoena; and that he did not consult Kelley about appearing in answer to the subpoena. During this examination Kelley was not present. A recess was taken until 2:00 p. m. of the same day at which time the witness was ordered to return with the missing documents. He did return, accompanied by his attorney Kelley, and was again interrogated about the letters. He said, among other things, that they pertained to private correspondence between himself and Matthews; that they were about the affairs of the company; and that they contained instructions from Matthews to the witness about the business of the company. The matter was again continued for ten days for Eykelboom to produce the letters and he was placed under a *ne*

*exeat* bond of $1000.00. October 3, the hearing was resumed. Eykelboom testified that he had wired Christian as follows:

"Receiver has been appointed for Guaranty Securities Company. I am accused of having the file of letters which you had in your possession when replevin suit was begun in Justice Court. I have been given ten days to produce the letters. If you have letters send them to Samuel J. Sackett attorney Foster Bldg. Denver who has been appointed receiver for company. If they are not in your possession wire Sackett where they are. If you mail them register package. Don't fail to act promptly. I will defray all expenses."

To which Christian answered, "I haven't the letters"; that while he was in New Mexico Christian was his clerk; that Christian had never been his clerk; that upon his return Christian told him he had the letters in his possession; that Christian did not tell him where the letters were; that Christian had no other papers of the company in his possession because none were missing; that a whole bunch of papers were missing; that he employed Kelley to protect Christian; that he did not employ Kelley to protect Christian; that he did not know if the papers were in existence or were destroyed; that he advised Christian to stay in New York until this suit was determined; that he told Christian not to go away on account of this suit; that he did not know the papers had been examined and initialed; and that Christian told him this had been done. The hearing was thereupon continued to October 13, and again to October 24, and again to November 7. On the latter date McMillan, deputy State Bank Commissioner, testified he had gone to Omaha, had been refused inspection of the records in possession of the trustee in bankruptcy for the Nebraska Company, had obtained an order from the Federal Judge permitting such inspection, had examined all said records and files and found them intact save only the duplicate of the file missing from the Denver office, which duplicate could not be found. Eykelboom was

again examined and testified that he had gone to Omaha (prior to the visit of McMillan there) ; that he talked with Matthews and told him every detail of the proceeding; that he did not discuss the detail of the file with Matthews; that Matthews was president of the bank in Omaha that failed and president of the Nebraska Securities Company; that no one had a key to the Denver desk save Christian, Matthews and himself; that he went to Omaha on Kelley's advice to get copies of the papers; that he did not go to get the papers but "to arrange for them to get copies if they wanted to"; that Mr. Webb (formerly personal attorney for Matthews, thereafter trustee in bankruptcy of the Nebraska Company, and who furnished the security on Eykelboom's *ne exeat* bond) told him, "If your opponent in Denver wants these copies they can get them at any time through the court—why don't they get them? I don't want to give them to you"; that while in Omaha for two days he stayed at Matthews' house.

The transcript shows that the court found as follows:

September 22, that Eykelboom had conspired with Christian, and perhaps others, to put the letters out of reach of the court, had given testimony full of contradictions and mis-statements and showing a plain attempt to disguise the facts.

October 3, that it was clear Eykelboom had destroyed the letters, or conspired for their destruction, or was secreting them from the court; that he knew whether they existed and if they existed could produce them; that as shown by his "appearance," his "hesitancy," his "evasiveness" and his "effort to bluff" he alone was responsible for making away with the letters, and he was adjudged in contempt.

November 7, that Eykelboom had willfully placed himself in contempt of court; that he refrained from producing the files knowing what became of the one in his possession.

Thereupon the order of commitment complained of was entered. It recites that "at this day L. D. Eykelboom hav-

ing been found guilty of contempt of court, it is ordered," etc. The facts constituting the contempt are not recited in this order. Thus far the power of the court to issue the subpoena, enforce the same, and examine the witness concerning the documents, had not been questioned.

Defendant's bill of exceptions was prepared and tendered to the trial judge on December 7, and on December 27 Eykelboom sought to purge the contempt by a tender of affidavits of himself and Christian. Eykelboom's affidavit is a mere compilation of the most favorable version of the transaction possible from his testimony, omitting the contradictions and inconsistencies. The only new matter contained therein is the assertion that he had no intention to be defiant or contemptuous. Christian's affidavit is a simple assertion of the truth of Eykelboom's affidavit, as far as the facts are known to him, with the added statement that he never told Eykelboom, or any one else, that he had returned the papers to the roll top desk. Both these affidavits were ruled out by the court.

BURKE, J. After stating the facts as above.

Plaintiff in error contends, 1. That the subpoena issued in violation of section 7, article II of the Colorado Constitution. 2. That Eykelboom is excused by having shown his inability to comply with the order. 3. That the court could and did do nothing more than reach the conclusion that Eykelboom had testified falsely and had no power to punish for contempt upon that basis. 4. That the affidavits of Eykelboom and Christian, tendered December 27, purged the contempt. 5. That the judgment order is invalid because it fails to set out the facts constituting the contempt as required by section 356 of the Civil Code. (R. S. 1908.)

1. Section 7 article II of the Colorado Constitution provides security "from unreasonable searches and seizures," that search warrants shall not be issued without probable cause supported by oath reduced to writing and describing the place to be searched or the thing to be seized. It has

no application to ordinary cases of the production of documents under a *subpoena duces tecum*. It is admitted that some of these letters contained instructions concerning the business of a concern in charge of the court by receivership. To what extent they belonged to the company was, and is, disputed but so far as they did the court had power to compel their production. The witness, an officer of that company and as such in possession of these papers, failed and refused to deliver them. He made no offer to segregate that portion which he claimed was private and deliver the remainder. His claim to exemption under this section of the constitution is raised for the first time in this court and is without merit. Having attended in response to the subpoena and submitted to examination without objection he waived any irregularity. *Scott v. Shields,* 8 Cal. App. 12, 96 Pac. 385, 387.

The court had inherent power to issue the subpoena. That power was not limited to the parties or affected by said section 7 article II of the constitution. *United States v. Terminal R. R. Assn.,* 148 Fed. 486.

2. We are unable to agree that this record discloses Eykelboom's inability to produce the papers. If it does not clearly show the contrary we think it does clearly show that Eykelboom testified falsely as to the reason for that inability. He refused in court to produce the documents as ordered. If without justification that conduct constituted criminal contempt. The justification he offered was inability due to no fault of his own. The falsity of that justification appears from his own testimony. That manifest falsehood, in the immediate presence of the court, constituted a direct contempt.

3. It is the law that a court has the right to punish as a contempt manifest perjury committed in its presence, where the court knows, judicially and beyond doubt, that the testimony is false. 13 C. J. 25.

We think that the language of the record before us so shows. Add to this the emphasis of that conduct and demeanor found by the court and the conclusion must have been irresistible.

4. The affidavits of Eykelboom and Christian presented on December 27, do not purge the contempt. They merely deny it. Taken in connection with what had gone before they emphasize it. One who has given false testimony in a court, or conducted himself in an insolent and contemptuous manner in its presence, can not purge that contempt by a written denial under oath that it ever occurred.

5. Section 356 Civil Code (R. S. 1908), requires the order of commitment to recite the facts only where summary punishment is inflicted. It is so interpreted in *Shore v. The People*, 26 Colo. 516, 520, 59 Pac. 49. Cases of criminal contempt (such as the one before us) are not within the provisions of said section. In no event would more than a substantial compliance be required. *Wyatt v. The People*, 17 Colo. 252, 267, 28 Pac. 961. The record before us clearly sets forth the facts. They were pointed out by the trial court at the time of their occurrence and Eykelboom's attention directed to them and to the court's conclusion that they constituted contempt.

The supersedeas is denied and the judgment affirmed.

MR. CHIEF JUSTICE SCOTT not participating.

MR. JUSTICE TELLER sitting as Chief Justice.