In re: The PEOPLE of the State of Colorado, Plaintiff–Respondent,

v.

Thomas MASON, Defendant–Petitioner.

v.

No. 98SA453.

Supreme Court of Colorado.

Nov. 1, 1999.

As Modified on Denial of Rehearing Dec. 13, 1999*.

\* Chief Justice MULLARKEY, Justice KOURLIS, and Justice RICE would grant the petition.

---

A. William Ritter, Jr., District Attorney, Second Judicial District, Nathan B. Coats, Chief Appellate Deputy District Attorney, Denver, Colorado, Attorneys for Plaintiff–Respondent.

Springer & Steinberg, P.C., Harvey A. Steinberg, William R. Kelso, Denver, Colorado, Attorneys for Defendant–Petitioner.

Justice KOURLIS delivered the Opinion of the Court.

We issued a rule to show cause pursuant to C.A.R. 21 in this case to determine whether a prosecutor may, after filing charges against a defendant, issue a subpoena duces tecum to compel production of the defendant's bank and telephone records without first obtaining a search warrant supported by probable cause. We now hold that a subpoena duces tecum for such records is not an unreasonable search and seizure under Article II, Section 7 of the Colorado Constitution provided that it is supported by probable cause and is properly defined and executed. We have previously concluded that citizens of Colorado have a reasonable expectation of privacy in bank and telephone records. By that ruling, we have invoked the protections of Article II, Section 7 of the Colorado Constitution, which requires probable cause for the search or seizure of protected materials. Thus, even in the context of a pending criminal prosecution, the defendant must be permitted to challenge a demand for production of protected telephone and bank records on the grounds of lack of probable cause. However, we further hold that the legal document compelling access to the records need not be a warrant, but may be a subpoena duces tecum. Accordingly, we make the rule absolute in part and discharge it in part. We direct the trial court to make the remaining determination under this test as to whether probable cause for the subpoena existed. If so, the subpoena is enforceable.

## I.

The People allege that on March 20, 1998, the defendant, Thomas Mason, solicited an undercover police detective to murder his wife in exchange for $5,000. This transaction was the culmination of several telephone conversations between Mason and the detective concerning Mason's desire to kill his wife in a staged automobile accident. Mason settled on a plan whereby the detective would crush Mason's wife's car with a large truck on Brighton Boulevard. To assist in this scheme, Mason purchased a compact Honda automobile for his wife in October 1997. Mason's motive was allegedly to further an extramarital affair with a woman who later told police that she had been seeing Mason since approximately September 1997.

Four days after the alleged transaction, the People charged Thomas Mason with one count of solicitation to commit first degree murder in derogation of section 18–3–102(1)(a), 6 C.R.S. (1998). The trial court held a preliminary hearing in May 1998, and bound the case over for trial. While preparing for trial in August 1998, the District Attorney's Office for the City and County of Denver issued subpoenas duces tecum to a phone company and two banks, ordering production of telephone toll records and itemized telephone billing statements, as well as several months of the defendant's bank records.[1]

---

1. The People issued the first two subpoenas to Sprint Spectrum L.P. and AT & T Wireless Services. In identical terms, both subpoenas ordered production of the following information: "Itemized billing statement/toll records relating to cellular telephone (303) 906–5771 listing to Thomas Mason, or Mission Realty or S & T Investments. Said records to encompass the dates of September 1, 1997 through and including March 31, 1998." The People issued the third subpoena to Bank One. This subpoena required Bank One to produce:

> Banking records of Thomas T. Mason, including but not limited to checking account # 1210281349 in the name of MISSION REALTY AND INVESTMENTS, INC. from September 1, 1997 through and including the date the account was closed; such records to include but not be limited to applications to open

The People sent copies of the three subpoenas to defense counsel, who objected that the subpoenas called for an unconstitutional search and seizure under Article II, Section 7 of the Colorado Constitution because of the absence of a warrant supported by probable cause. After considering the parties' briefs on the matter, the trial court ruled that: the subpoena procedures were proper; the subpoenas themselves were constitutional; and the three subpoenaed parties should turn over the records in question to the People. Mason then petitioned this court pursuant to C.A.R. 21(a) to issue a rule to show cause why the subpoenas should not be quashed. We issued such a rule, and the trial court currently maintains the records under seal pending the outcome of this original proceeding.

## II.

This court has previously determined that Article II, Section 7 of the Colorado Constitution affords persons in this state a reasonable expectation of privacy in their personal telephone toll records and banking transaction records held by third-party banking and telephone service companies. *See People v. Corr*, 682 P.2d 20, 27–28 (Colo.1984) (holding that under the Colorado Constitution a reasonable expectation of privacy exists in telephone toll records); *People v. Sporleder*, 666 P.2d 135, 141–42 (Colo.1983) (holding that a telephone customer has a reasonable expectation of privacy under the state constitution in the telephone numbers she dials from her home telephone); *Charnes v. DiGiacomo*, 200 Colo. 94, 100, 612 P.2d 1117, 1121 (1980) (holding that a bank depositor has a reasonable expectation of privacy under the Colorado Constitution in the bank's records of his financial transactions)[2].

In recognizing a reasonable expectation of privacy in this context, we have afforded suspects in Colorado greater rights than are available under the federal Constitution. The United States Supreme Court has found no reasonable expectation of privacy in banking and telephone records under the Fourth Amendment to the United States Constitution. *See Smith v. Maryland*, 442 U.S. 735, 742–45, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (holding that a telephone customer does not have a reasonable expectation of privacy under the Fourth Amendment in telephone numbers dialed); *United States v. Miller*, 425 U.S. 435, 442, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) (holding that bank customers do not have reasonable expectations of privacy under the Fourth Amendment in banking transaction records). A minority of other states share our view, however, recognizing a privacy interest in telephone and bank records under their state constitutions. *See, e.g., People v. Mejia*, 95 Cal.App.3d 828, 157 Cal.Rptr. 233, 237 (1979) (finding a reasonable expectation of privacy in telephone records under the California Constitution); *Burrows v. Superior Court*, 13 Cal.3d 238, 118 Cal.Rptr. 166, 529 P.2d 590, 593 (1974) (finding a reasonable expectation of privacy in bank records under the California Constitution); *Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283, 1291 (1979) (finding a legitimate expectation of privacy in bank records under the Pennsylvania Constitution).

■ The issue presented in this case is whether Colorado case law extending a reasonable expectation of privacy to these materials automatically requires that any review of the materials take place only pursuant to a search warrant. We conclude that although bank and telephone records are indeed protected by a reasonable expectation of privacy, such protection does not automatically man-

the account; signature cards; account statements; copies of the front and back of check No. 1277 and check No. 1278; copies of front and back of any instrument deposited into the account; copies of deposit and withdrawal slips; records of automatic and telephone transfer of funds; and records of electronic funds transfers and intrabank funds transfers. The People issued the subpoena to AT & T Wireless by mistake, and they subsequently issued a similar subpoena to Airtouch Cellular, Inc.

2. Given the rapid advances in computer and telecommunications technology, a person's reasonable expectations of privacy in telephone and bank records may have changed since we decided *Sporleder* and *DiGiacomo*, so that the decisions may be subject to challenge. However, in the narrow context of this case, that question is not properly before the court.

date use of a search warrant in order to gain access to those records. Rather, the government may use a subpoena duces tecum for protected records as long as the defendant has the opportunity to challenge the subpoena for lack of probable cause.

### A.

There is a legitimate issue as to whether a properly authorized subpoena duces tecum is a search for purposes of the Fourth Amendment, or in this instance, for purposes of article II, Section 7 of the Colorado Constitution. The United States Supreme Court has called a subpoena duces tecum only a "constructive" search and, in a administrative context, has substituted other constraints for probable cause. See *Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 202, 208, 66 S.Ct. 494, 90 L.Ed. 614 (1946).

Most of the cases considering whether a subpoena duces tecum constitutes a search occur in either an administrative or grand jury context. These subpoenas present different questions.[3]

We conclude that a subpoena duces tecum directed at constitutionally protected materials is at least a constructive search and therefore proceed to analyze whether probable cause must underpin such a subpoena.

Article II, Section 7 of the Colorado Constitution provides that,

> The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

When the government seeks to gain access to materials protected under that section, both the plain language of the section and our precedent require probable cause as a condition precedent to the search or seizure. See, e.g., *Henderson v. People*, 879 P.2d 383, 391 (Colo.1994) (holding that if a reasonable expectation of privacy exists, probable cause is required to support a search and seizure under both Article II, Section 7 and the Fourth Amendment). Because our previous decisions have recognized such an expectation of privacy in telephone and bank records, it follows that criminal defendants must be afforded the opportunity to challenge a subpoena of these materials for probable cause. The logical consequence of this reasoning is that if Colorado did not recognize a reasonable expectation of Privacy in bank and telephone records, then a subpoena duces tecum for telephone and bank records would only need to meet reasonableness standards.

Other jurisdictions that recognize an expectation of privacy in subpoenaed materials have similarly held that a subpoena duces tecum of such records must be supported by probable cause. See, e.g., *Carlson v. Superior Court*, 58 Cal.App.3d 13, 129 Cal.Rptr. 650, 655 (1976) (holding that a subpoena duces tecum in constitutionally protected materials may not be enforced without probable cause for the charges and probable cause that the materials described in the subpoena would serve as material evidence); *Commonwealth v. Moore*, 430 Pa.Super. 575, 635 A.2d 625, 627 (1993) (upholding a subpoena duces tecum of constitutionally protected medical records when probable cause existed to believe that a crime had been committed); *cf. State v. Kluss*, 125 Idaho 14, 867 P.2d 247, 254 (Ct.App.1993) (finding that because no expectation of privacy in utility records existed under the Idaho Constitution, no probable cause determination was necessary for a subpoena of the records); *State v. Bodtmann*, 239 N.J.Super. 33, 570 A.2d 1003, 1007 (Ct. App.Div.1990) (upholding a subpoena duces tecum of blood alcohol content test results on less than probable cause because the defendant had no constitutional right to refuse the test). The court in *Carlson* explained that when citizens have a privacy interest in financial records, a probable cause determination is required because "an accused's constitutional right to privacy in his papers and records is not diminished because law enforcement officials seek to obtain them by

---

3. See infra Part IV.

subpoena rather than by warrant." 129 Cal. Rptr. at 655.

█ If a defendant challenges probable cause for the issuance of a subpoena for protected records, the court must determine whether it is reasonable to conclude that the subpoenaed bank and telephone materials exist, and whether there is a nexus between the materials and the charges against the defendant. In defining probable cause in this context, we draw on the standard for obtaining a valid search warrant — "[p]robable cause exists when an affidavit for a search warrant alleges sufficient facts to warrant a person of reasonable caution to believe that evidence of criminal activity is located at the place to be searched." *People v. Leftwich,* 869 P.2d 1260, 1265 (Colo.1994) (emphasis omitted). We now hold that probable cause for a subpoena duces tecum of protected telephone and bank records of the defendant in a pending criminal prosecution requires a reasonable likelihood that the evidence sought exists and that there is a nexus between the defendant and the crime charged. We limit this holding to the protected telephone and bank records of the defendant only.

### III.

The requirements for protecting personal privacy under Colorado constitutional search and seizure provisions have consisted traditionally of a warrant, supported by probable cause. *See Sporleder,* 666 P.2d at 143. In *Sporleder,* we held that the acquisition of telephone numbers dialed from a suspect's home through the use of a pen register was "nothing less than a full-scale search and seizure," requiring either a warrant, consent, or exigent circumstances. *Id.* at 143–44.

The question then becomes whether the necessary protection can be afforded through some process other than issuance of a warrant. We conclude that a subpoena may indeed satisfy constitutional mandates, because a subpoena duces tecum invokes procedural safeguards that even the issuance of a warrant cannot provide. Because a subpoena duces tecum offers greater protection to

defendants, it may effectively substitute for the issuance of a search warrant.

The ability to challenge a prospective subpoena prior to any seizure, as embodied in the notice procedures of Crim. P. 17(c), invokes procedural safeguards that adequately protect the defendant's state constitutional right of privacy. Here, the prosecutor is proceeding under Crim. P. 17(c), which applies only to pending criminal prosecutions and which authorizes the prosecutor to obtain evidentiary materials pursuant to a subpoena duces tecum. Under that rule, the prosecutor must "forthwith" serve a copy of the subpoena on the defendant in order to give the defendant the opportunity to seek to quash the subpoena before the return date. *See* Crim. P. 17(c). If the defendant does not object, then the subpoena is enforceable without further court intervention. On the other hand, if the defendant does move to quash, and asserts a specific basis, then the court must intercede and rule. We note that a search warrant supported by probable cause for these same records may be obtained by the prosecutor, ex parte, and executed without notice to the defendant and without opportunity for the defendant to challenge the search and seizure before it occurs. Hence, we determine that a subpoena, a copy of which is served on a defendant in accordance with our rules, may substitute for a warrant under these circumstances.

### IV.

█ Today's ruling does not undermine our previous statements that a probable cause determination is not required for either a grand jury or an administrative subpoena of constitutionally protected materials. Because those subpoenas arise out of investigative authority grounded in other principles and statutes, they are not limited in a similar fashion by the constitutional protection we today recognize under these facts.

For example, in *Pignatiello v. District Court,* 659 P.2d 683 (Colo.1983), this court upheld a grand jury's use of subpoenas duces tecum [4] to obtain bank records in an investigation concerning possible securities law violations. We held that the effect of the bank customer's privacy interest was simply to

4. The subpoenas duces tecum contained the following order:

invoke Fourth Amendment protections "prevent[ing] governmental intrusions into or confiscations of bank records *without the use of appropriate legal processes.*" *Id.* at 685 (emphasis added). The legal processes of a criminal prosecution differ substantially from those of a grand jury. Grand juries are independent entities, subject to different standards and procedures than are applicable in criminal trials. *See, e.g., People v. Noline,* 917 P.2d 1256, 1263 (Colo.1996). In addition, grand juries traditionally have broad preindictment investigatory power. *See Pignatiello,* 659 P.2d at 684.

■ This ruling also does not prevent administrative subpoenas from issuing without probable cause. *See Oklahoma Press Publ'g Co. v. Walling,* 327 U.S. 186, 209, 66 S.Ct. 494, 90 L.Ed. 614 (1946).[5] In that case, the Supreme Court held that an administrative agency subpoena is proper as long as it is reasonable. *See id.* at 208, 66 S.Ct. 494. A subpoena duces tecum is reasonable if it: (1) is for a lawfully authorized purpose; (2) seeks information relevant to the inquiry at hand; and (3) contains a "specification of the documents to be produced [that is] adequate, but not excessive, for the purposes of the relevant inquiry." *Id.* at 209, 66 S.Ct. 494; *Board of Med. Exam'rs v. Duhon,* 867 P.2d 20, 24 (Colo.App.1993), *aff'd,* 895 P.2d 143 (Colo.1995); 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.13(a) (3d ed.1996). As long as these protections are afforded, the Fourth Amendment is not implicated. *See Walling,* 327 U.S. at 195, 66 S.Ct. 494. The same reasonableness requirements apply even to an administrative subpoena of constitutionally protected materials. *See DiGiacomo,* 200 Colo. at 101, 612 P.2d at 1122. When such materials are subpoenaed, no finding of probable cause is required. *See id.*

## V.

Because Mason had a reasonable expectation of privacy in his telephone and bank records protected by our state constitution, we conclude that he must be able to challenge the subpoena duces tecum for lack of probable cause. We deem the defendant's motion to quash to be such a challenge, on which the trial court has not ruled. Accordingly, we make the rule absolute in part and discharge it in part. We direct the trial court to determine whether probable cause for issuance of the subpoena existed. If the court concludes that probable cause existed, the subpoena is enforceable.

You are further commanded to bring with you all bank records which reflect activity pertaining to [the petitioner]. These records should include but are not limited to all transactions involving checks, deposits, wire transfers, withdrawals, loans, bank drafts, cashier checks, money orders, intra bank transfers, authorized signature cards, partnership agreements, and corporate minutes pertaining to the establishment of the accounts between the dates of January 1, 1980, and the present. *Pignatiello,* 659 P.2d at 684.

5. The Supreme Court's analysis in *Walling* was consistent with this court's decision 24 years earlier in *Eykelboom v. People,* 71 Colo. 318, 206 P. 388 (1922). In *Eykelboom,* this court assessed the propriety of a trial court's judgment of contempt against a witness in a civil case for failure to comply with a subpoena duces tecum. In considering Eykelboom's argument that the subpoena violated Article II, Section 7, we held that Section 7, Article 2, of the Colorado Constitution "has no application to ordinary cases of the production of documents under a subpoena duces tecum.... The court had inherent power to issue the subpoena. That power was not limited to the parties or affected by said section 7, art. 2, of the Constitution." *Eykelboom,* 71 Colo. at 325, 206 P. at 390.