BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE ROBERT J. KOCHLY, DISTRICT ATTORNEY, COUNTY OF CONTRA COSTA, has requested an opinion on the following questions:
1. Do the federal statutes governing the installation of pen registers and trap and trace devices provide authority for issuance of a state court order permitting a state law enforcement officer to install or use pen registers or trap and trace devices?
2. Do the state statutes governing the issuance of administrative subpoenas provide authority for a state law enforcement officer to install or use pen registers or trap and trace devices?
 CONCLUSIONS
1. The federal statutes governing the installation of pen registers and trap and trace devices do not provide authority for issuance of a state court order permitting a state law enforcement officer to install or use pen registers or trap and trace devices.
2. The state statutes governing the issuance of administrative subpoenas do not provide authority for a state law enforcement officer to install or use pen registers or trap and trace devices.
 ANALYSIS
A "pen register" records the numbers dialed out from a particular telephone line. (Smith v. Maryland (1979) 442 U.S. 735, 736, fn. 1; People v. Blair (1979) 25 Cal.3d 640, 654, fn. 11.) A "trap and trace device" records the originating telephone numbers of the calls dialed into a particular telephone line. (People v. Suite (1980)101 Cal.App.3d 680, 684.)[1] The placement of pen registers and trap and trace devices allows law enforcement officers to obtain such information as the names of suspects in an investigation, the identities and relationship between individuals suspected of engaging in criminal activity, especially in conspiracies, and the location of fugitives.
Search warrants issued by a court and subpoenas issued either by a court or grand jury are normally available to authorize the placement of pen registers and trap and trace devices in California.[2] The two questions presented for resolution concern whether federal statutes governing the installation of pen registers and trap and trace devices and state statutes governing the issuance of administrative subpoenas may also provide authority for state law enforcement officers to obtain telephone calling records. We conclude that these two additional sources of authority are not available to state law enforcement officers in the circumstances presented.
 1. Federal Statutes
The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." To determine whether a particular form of governmental surveillance is a "search" within the meaning of the Fourth Amendment, courts generally look to the leading case of Katz v. United States (1967) 389 U.S. 347, which involved eavesdropping by means of an electronic listening device placed on the outside of a telephone booth. (See, e.g., Kyllo v. United States (2001)533 U.S. 27, 32-33.) In Katz, the court held that the eavesdropping in question constituted an unlawful search because it violated a subjective expectation of privacy that society recognized as reasonable. (Katz v. United States, supra, 389 U.S. at p. 353.)
In Smith v. Maryland, supra, 442 U.S. 735, the court followed the Katz standard, concluding that individuals have no Fourth Amendment expectation of privacy in the numbers dialed to or from their telephone lines. The court reasoned that telephone customers are generally aware that telephone companies routinely collect and use such information for various purposes including billing and system maintenance.
In 1986, following the Smith decision, Congress enacted a statutory scheme (18 U.S.C. § 3121-3127)[3] regulating the use of pen registers and trap and trace devices.[4] As relevant for our purposes, section 3121 provides:
 "(a) Except as provided in this section, no person may install or use a pen register or a trap and trace device without first obtaining a court order under section 3123 of this title. . . ."
Section 3122 states:
". . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(a)(2) Unless prohibited by State law, a State investigative or law enforcement officer may make application for an order or an extension of an order under section 3123 of this title authorizing or approving the installation and use of a pen register or trap and trace device under this chapter, in writing under oath or equivalent affirmation, to a court of competent jurisdiction of such State.
"(b) An application under subsection (a) of this section shall include
 "(1) the identity of . . . the State law enforcement or investigative officer making the application and the identity of the law enforcement agency conducting the investigation; and
 "(2) a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency."
Section 3123 provides:
". . . . . . . . . . . . . . . . . . . . . . . . . .
 "(a)(2) Upon an application made under section 3122 of this title, the court shall enter an ex parte order authorizing the installation and use of a pen register or trap and trace device within the jurisdiction of the court if the court finds that . . . the State law enforcement or investigative officer has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation.
". . . . . . . . . . . . . . . . . . . . . . . . . .
 "(d) An order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that
"(1) the order be sealed until otherwise ordered by the court; and
 "(2) the person owning or leasing the line to which the pen register or trap and trace device is attached, or who has been ordered by the court to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court."
Thus, as a general rule, federal law forbids the use of pen registers and trap and trace devices without the consent of the telephone consumer or a court order. (§ 3121.) Significantly, the federal statutes do not allow state law enforcement officers to apply for a state court order if the order would be "prohibited by State law." (§ 3122(a)(2).) Accordingly, we must look to California law to determine if the federal statutes may provide authority for state law enforcement officers to obtain telephone calling records in the circumstances presented.[5]
The California Constitution is a "document of independent force" (American Academy of Pediatrics v. Lungren (1997) 16 Cal.4th 307, 325), which extends protection for civil rights broader than and independent of the parallel rights afforded by the United States Constitution. (Id. at pp. 325-326; see People v. Pettingill (1978) 21 Cal.3d 231, 247; People v. Hannon (1977) 19 Cal.3d 588, 606.) Section 13 of article I of the California Constitution protects "against unreasonable seizures and searches."[6] Our Supreme Court has held "that, in determining whether an illegal search has occurred under the provisions of our Constitution, the appropriate test is whether a person has exhibited a reasonable expectation of privacy and, if so, whether that expectation has been violated by unreasonable governmental intrusion." (Burrows v. Superior Court (1974) 13 Cal.3d 238, 242-243.) In Burrows, the court concluded that bank customers have a reasonable expectation of privacy in the financial information they transmit to their banks, reasoning that it is impossible to participate in the economic life of contemporary society without maintaining a bank account and that the totality of a person's bank records provides a "virtual current biography." (Id. at p. 247.)
In People v. Blair, supra, 25 Cal.3d 640, the court rejected the rationale of Smith v. Maryland, supra, 442 U.S. 735, and concluded that telephone records, like the bank records found protected under California law in Burrows v. Superior Court, supra, 13 Cal.3d 238, were protected against unreasonable searches and seizures in California. (Id. at p. 653.) In Blair, the telephone records were obtained by a subpoena issued by a Federal Bureau of Investigation agent under authority of a United States Attorney as authorized by a federal grand jury. The court found that the federal subpoena was insufficient for purposes of the search and seizure provisions of the California Constitution since there had been no prior "judicial determination that law enforcement officials were entitled" to the records. (Id. at p. 655; see Carlson v. Superior Court (1976) 58 Cal.App.3d 13, 21-23.) Consequently, the seizure of the telephone records was ruled a violation of article I, section 13 of the California Constitution.
We believe that telephone calling records would additionally be protected under article I, section 1 of the California Constitution, which provides:
 "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."
Under the rationale of Burrows and Blair, information obtained from pen registers and trap and trace devices would fall within the zone of privacy protected by the state Constitution, since the records of incoming or outgoing calls could lead to the discovery of an individual's "virtual current biography." (People v. Blair, supra, 25 Cal.3d at p. 653; Burrows v. Superior Court, supra, 13 Cal.3d at p. 247; People v. Chapman, supra, 36 Cal.3d at p. 109.)
Based upon the foregoing, we find that the California Constitution allows the placement of pen registers and trap and trace devices only if a judicial ruling is first obtained that the law enforcement officers are entitled to the records. (See 69 Ops.Cal.Atty.Gen., supra, at p. 59.) Do the court procedures set forth in federal law meet this state constitutional standard for prior judicial review? They do not.
The federal statutory scheme permits state law enforcement officers to apply for a state court order authorizing the use of a pen register or trap and trace device based upon a written certification that the information is "relevant to an ongoing criminal investigation." (18 U.S.C. § 3122(b)(2).) Upon a proper application, the court must issue the order. (18 U.S.C. § 3122(a)(2).) The statutes do not authorize a court to go outside the written certification (In re Order Authorizing Installation of Pen Reg. (M.D.Fla. 1994) 846 F. Supp. 1555,1559), thus making the judicial review "ministerial in nature" (United States v. Fregoso (8th Cir. 1995) 60 F.3d 1314, 1320).
Under Borrows and Blair, this federal statutory process is inadequate to protect a California resident's privacy interests in telephone calling records. As previously noted, the federal subpoena in Blair was found not to constitute appropriate "legal process" because issuance of the subpoena was a ministerial act with no "judicial determination" that the issuer was "entitled" to obtain the information. (People v. Blair, supra, 25 Cal.3d at pp. 651, 655.) A seizure of information is unreasonable when "`the character, scope, and relevancy of the material obtained were determined entirely by the exercise of the unbridled discretion of the police.'" (People v. Chapman, supra, 36 Cal.3d at p. 113, quoting Burrows v. Superior Court, supra, 13 Cal.3d at p. 243); see People v. Blair, supra, 25 Cal.3d at p. 651.)
The federal statutes governing pen registers and trap and trace devices likewise fail the California constitutional test. No adequate prior judicial review is provided in the statutory scheme; rather, unbridled discretion is given to law enforcement officers.
We conclude in answer to the first question that the federal statutes governing the installation of pen registers and trap and trace devices do not provide authority for issuance of a state court order permitting a state law enforcement officer to install or use pen registers or trap and trace devices.
 2. State Administrative Subpoena Statutes
Government Code section 11180[7] authorizes the head of each of the state's departments to conduct investigations concerning matters relating to the subjects under the department's jurisdiction. Included within this power is the right to subpoena records. (§ 11181, subd. (e).) The department head may delegate subpoena powers to any officer of the department authorized to conduct the investigation. (§ 11182.)
Significantly, the department head or designee may issue a subpoena for investigative purposes in the absence of any formal charge or court proceeding. (§§ 11180, 11181; Brovelli v. Superior Court (1961)56 Cal.2d 524, 527-528.) The subpoenas are returnable directly to the department head, and no provision is made for notice to a third party-such as a telephone customer- or for the filing of a motion to quash or other formal opposition. (Compare §§ 11181, 11184, 11187 with Pen. Code, §§ 1325, 1327; Code Civ. Proc., §§ 1385.3, 1385.4.) Instead, if the subpoenaed party fails to comply with the subpoena, the department head may apply to a court for an order enforcing the subpoena. (§ 11187.) If it appears at the hearing "that the subpoena was regularly issued . . . the court shall enter an order" enforcing the subpoena. (§ 11188, italics added.) Hence, judicial enforcement of administrative subpoenas is subject to a standard less exacting than that required for a criminal search warrant. (See Craib v. Bulmash (1989) 49 Cal.3d 475, 481-486.)
Of course, "department heads cannot compel the production of evidence in disregard of . . . the constitutional provisions prohibiting unreasonable searches and seizures." (Brovelli v. Superior Court, supra, 56 Cal.2d at p. 529; see also Pacific-Union Club v. Superior Court (1991)232 Cal.App.3d 60, 70, 79-80; Wood v. Superior Court (1985)166 Cal.App.3d 1138, 1146-1147.) "[A] governmental administrative agency is not in a special or privileged category, exempt from the right of privacy requirements which must be met and honored generally by law enforcement officials." (Board of Medical Quality Assurance v. Gherardini (1979) 93 Cal.App.3d 669, 679-680; see Carlson v. Superior Court, supra, 58 Cal.App.3d at p. 22 ["Surely an accused's constitutional right to privacy in his papers and records is not diminished because law enforcement officials seek to obtain them by subpoena rather than by warrant"].)
As with the federal statutes governing the installation of pen registers and trap and trace devices, the state administrative subpoena statutes do not contain a provision allowing for prior judicial review establishing that the law enforcement officers are entitled to the records. The California Constitution requires such prior review.
We conclude in answer to the second question that the state statutes governing the issuance of administrative subpoenas do not provide authority for a state law enforcement officer to install or use pen registers or trap and trace devices.
[1] Pen registers and trap and trace devices are not "wiretaps," that is, they do not eavesdrop on or record telephone conversations. (Smith v. Maryland, supra, 442 U.S. at p. 736, fn. 1; People v. Blair, supra, 25 Cal.3d at p. 654, fn. 11; 69 Ops.Cal.Atty.Gen. 55, 58 (1986).) Generally speaking, the legal requirements for placing a wiretap are more stringent than those for placing a pen register or trap and trace device. (69 Ops.Cal.Atty.Gen, supra, at pp. 56-58.)
[2] Law enforcement officers may also procure telephone calling information by obtaining the person's consent or if "exigent circumstances" are present. (See, e.g., People v. Chapman (1984)36 Cal.3d 981, 113; People v. Suite, supra, 101 Cal.App.3d at p. 687.)
[3] All references hereafter to title 18 of the United States Code prior to footnote 7 are by section number only.
[4] The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (USA Patriot Act, Pub.L. No. 107-56) amended the definitions of "pen register" and "trap and trace device" to include processes that capture routing, addressing, or signaling information transmitted by an electronic communication facility. (18 U.S.C. § 3127(3), (4).) These amendments permit government officials to obtain information from computers and cell phones as well as from land-line telephones. (See 18 U.S.C. § 3121.) Issues arising from these statutory amendments are beyond the scope of this opinion.
[5] We recognize that the California Constitution eliminates any judicially created independent state grounds for the exclusion of evidence. (Cal. Const., art. I, § 28, subd. (d); In re Lance W. (1985) 37 Cal.3d 873, 886-887.) As a result, telephone calling records would be admissible against a California defendant in a criminal trial even though their seizure violated the California Constitution, as long as the records were admissible under the federal Constitution. (See, e.g., People v. Bencomo (1985) 171 Cal.App.3d 1005, 1015; People v. Lissauer (1985) 169 Cal.App.3d 413, 419.) Regardless of the evidence's admissibility, however, the underlying act of seizure in violation of the California Constitution would remain unlawful. (In re Lance W., supra, 37 Cal.3d at p. 886; People v. Martino (1985) 166 Cal.App.3d 777, 785, fn. 3.)
[6] "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated. . . ." (Cal. Const., art. I, § 13.)
[7] All references hereafter to the Government Code are by section number only.